## Commonwealth v. Lycoming County et al.

*Candor, Youngman & Gibson,* for plaintiffs.

*Charles F. Bidelspacher, Marshall R. Anspach* and *Joseph M. McNerney,* for defendants.

PER CURIAM, June 12, 1947.—This matter is before the court en banc on argument had on a rule directed to the County of Lycoming, the Lycoming County Institution District, Borough of Duboistown, School District of Duboistown, Veneta B. Wheeland, Tax Collector of the Borough of Duboistown, and the Treasurer of Lycoming County, to show cause if any they have why the assessments levied for the years 1943 and 1944, against certain real estate purchased by the Department of Public Assistance, situate in the Borough of Duboistown, Lycoming County, should not be stricken from the records in the office of the county

commissioners of said county; and why the taxes for the year 1943, on said levy, paid under protest by the Commonwealth of Pennsylvania, should not be refunded to the Commonwealth.

Answers to the averments in the petition for the rule were duly filed by the County Treasurer of Lycoming County, the Lycoming County Commissioners, also by said commissioners acting as directors for the Lycoming County Institution District, by the Borough of Duboistown, and Veneta B. Wheeland, tax collector.

The question raised by said petition and answers thereto is whether real estate purchased by the Commonwealth of Pennsylvania, Department of Public Assistance, at a county treasurer's sale, is, subject to local county, borough and school taxes after the date of such county treasurer's sale.

It appears from the record that the Commonwealth of Pennsylvania, Department of Public Assistance, obtained a judgment lien against Ida Olson, prior to the year 1942, and that she was the owner of certain real estate situate in the Borough of Duboistown, Lycoming County, Pa. That in order to protect this lien the Commonwealth of Pennsylvania, Department of Public Assistance, purchased said real estate at a public tax sale by the county treasurer on August 3, 1942, and a deed bearing that date was delivered to the Department of Public Assistance. Subsequently this property was assessed by the County of Lycoming for the years 1943 and 1944, and a tax amounting to $37.14 was paid to the County of Lycoming, under protest, by the Department of Public Assistance, for the year 1943. The land was not redeemed by said former owner within the statutory period of two years.

Prior to the argument had on this rule, counsel for respective parties stipulated as follows:

"It is stipulated and agreed by all counsel for parties in interest, that a certain property formerly owned by Ida Olson in the Borough of Duboistown was pur-

chased by the Commonwealth of Pennsylvania, Department of Public Assistance, at County Treasurer's Sale held on August 3, 1942; that taxes were assessed against the said property for the years 1943 and 1944, and taxes levied on said assessments in said years; that the Commonwealth of Pennsylvania, Department of Public Assistance paid the tax levied for 1943, under protest and that the tax for the year 1944 is not paid; that the property was not redeemed during the two year period of redemption and that it was, therefore, conveyed to the Commonwealth of Pennsylvania, Department of Public Assistance, by the County Treasurer's deed, dated August 3, 1942, acknowledged January 26, 1943 in open court, and recorded in Lycoming County on April 9, 1944, in Deed Book 331, page 122.

"It is agreed that the question before the Court in this case is whether or not the taxes assessed and levied for the period of 1943-44, being the two year period of redemption, should or should not be stricken off as taxes against an agency of the Commonwealth, and also whether or not said property was during the period held for public purposes.

"After the County Treasurer's sale in August, 1942, the property in question was occupied by Mrs. Ellen B. Fischer, daughter of Ida Olson, deceased. The occupant paid no rent and in July, 1945, was still living on the premises with her niece, Mrs. Jeanne W. Mundy. The Department of Public Assistance has entered into Articles of Agreement to sell this property to the said Jeanne W. Mundy for an agreed price of One Thousand Three Hundred Forty-three Dollars and Twenty-three Cents ($1,343.23). The payments are Thirty ($30.00) Dollars per month.

"The first payment was made on September 27, 1945, and other payments were made November 8 and December 10, 1945, January 8, February 11, March 20 and April 22, 1946. The May and June payments are in arrears as is the interest.

"These Articles of Agreement are dated September 29, 1945."

One of the principal issues raised in this controversy is whether the property in question is being used for a public purpose of the Commonwealth and whether it is being held by the Commonwealth as a properly acquired part of the fund for the use of the Department of Public Assistance.

It was said by the Supreme Court of Pennsylvania in Commonwealth of Pennsylvania, State Employes' Retirement System, v. Dauphin County et al., 335 Pa. 177 (p. 183):

"Generally, the question whether public property is being used for a public or private purpose under Article 9 (of the Constitution) is resolved by determining whether the particular property is held for governmental or proprietary reasons. Such an inquiry cannot be controlled by the criteria existing years ago. The old landmarks cannot be our exclusive guides, for our social panorama has been extended along broad lines, calling for the institution of new and different relationships between government and members of the general public. The category of governmental functions has been constantly enlarged with new governmental operations to meet changing conditions. Proprietary functions have also increased with the times. . . .

"Although years ago the thought of committing the execution of a function of government to a separate body of this sort was seldom entertained, it is now a common practice and of course does not impair the governmental aspect of the work undertaken. (p. 184). . . .

"The fact that revenue is derived from the property or that it is leased for private use does not preclude the existence of a public use by the Commonwealth. This court recently held in Dornan v. Phila-

delphia Housing Authority, et al., 331 Pa. 209, 228, that despite the rental of publicly owned property to private individuals, the exemption of such property from taxation was valid because of the predominant public purpose of slum clearance." (p. 185).

On this question of what constitutes a public use it was also declared by the Supreme Court of Pennsylvania in Dornan v. Philadelphia Housing Authority et al., 331 Pa. 209 (p. 221):

". . . that judicial interpretation of 'public use' has not been circumscribed in our State by mere legalistic formulas or philological standards. On the contrary, definition has been left, as indeed it must be, to the varying circumstances and situations which arise, with special reference to the social and economic background of the period in which the particular problem presents itself for consideration. Moreover, views as to what constitutes a public use necessarily vary with changing conceptions of the scope and functions of government, so that today there are familiar examples of such use which formerly would not have been so considered. As governmental activities increase with the growing complexity and integration of society, the concept of 'public use' naturally expands in proportion. . . .

"It is not essential that the entire community or even any considerable portion of it should directly enjoy or participate in an improvement in order to make its use a public one: Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 161, 162; Mt. Vernon Cotton Co. v. Alabama Power Co., 240 U. S. 30, 32; . . .

" 'An enterprise does not lose the character of a public use because that use may be limited by circumstances to a comparatively small part of the public'." Citing Jacobs v. Clearview Water Supply Co., 220 Pa. 388.

We are of the opinion that the Department of Public Assistance in the administration of its program for aiding needy residents of this State is performing a governmental function and this function thereby becomes a public service. It is a matter of common knowledge that due to the widespread financial depressions which have occurred in recent years and which have affected adversely large numbers of worthy citizens of our Commonwealth, an urgent demand arose that such citizens be given financial aid from the Commonwealth. Out of this great need, and for which, in most cases, the applicant for State aid was in no way to blame, the Department of Public Assistance was created by the Public Assistance Law of June 24, 1937, P. L. 2051, sec. 1.

Another act passed at the same time, known as The Support Law of June 24, 1937, P. L. 2045, sec. 5, prescribed that when any person shall receive public assistance, the public body or public agency furnishing such assistance may sue for and recover any sum of money due from such person.

Surely the work of such an administrative body as the Department of Public Assistance, although it may relatively touch only a limited proportion of the population of our Commonwealth, nevertheless, is a most necessary and essential function and the money or property acquired by this department under the provisions of said act is so used as a governmental function, and thus constitutes a public purpose. See Commonwealth ex rel. Schnader v. Liveright et al., 308 Pa. 35.

Regardless of the fact that some of the funds allocated and apportioned by the Commonwealth of Pennsylvania to its Department of Public Assistance for the carrying out of its large program of relief are paid to a beneficiary owning real estate at the time and which subsequently at a county treasurer's sale be-

comes vested in the Commonwealth, the original investment does not cease to be public property administered for a public use.

As to whether land so held for a public purpose is exempt from local taxation, the Supreme Court said in Dornan v. Philadelphia Housing Co., supra:

"Indeed, in the absence of any statute to the contrary, public property used for public purposes is exempt from taxation and from assessments for improvements, and no express exemption law is needed." (Citing cases page 228.)

The Supreme Court added (p. 228):

"However, there is a succession of statutes, culminating in the General County Assessment Law of May 22, 1933, P. L. 853, section 204(g), which have expressly exempted all public property used for public purposes from local taxation."

As to the question of whether it was necessary that there be a specific exemption in the Housing Authorities Law which expressly exempted houses built under that law from taxes, under section 23 of this Housing Law, the Supreme Court, in Dornan v. Philadelphia Housing Company, supra, said (p. 233):

"The general exemption by section 23 from all taxes and assessments is, as previously pointed out, not only valid, but its statutory expression is unnecessary since it would have resulted from the public nature of the use of the housing projects. The exception of school taxes from the exemption, therefore, is meaningless, because, had it been intended that such taxes should be levied, it would have been necessary for the legislature not merely to 'except' them from an existing exemption but affirmatively to impose them, since a tax cannot arise by implication. Thus in Directors of the Poor v. School Directors, 42 Pa. 21, 25, it was said: 'No exemption law is needed for any public property, held as such. And declaring the poorhouse exempt from

all but state and road taxes . . . is really saying nothing unless state and road taxes be also expressly laid. They are not imposed by implication.' And in County of Erie v. City of Erie, 113 Pa. 360, 367, it was said: 'Such (public) property was not taxable (before the Constitution of 1874) because there was no law which made it so . . . The new Constitution might have made it taxable but did not.' "

In the recent decision in Commonwealth v. Dauphin County, 354 Pa. 556, where it appears that a portion of the State Workmen's Insurance Fund surplus was invested in a mortgage and the State Workmen's Insurance Board subsequently took title to the property, it was declared that the original investment does not cease to be public property administered for a public purpose merely because the form of the investment was changed from money to land. In such an event, under The General County Assessments Law of May 22, 1933, P. L. 853, sec. 204(g), such real estate is exempt from taxation as public property used for public purposes.

In the case of County of Erie v. City of Erie, 113 Pa. 360, the Supreme Court said (p. 366):

" 'The public is never subject to tax laws, and no portion of it can be, without express statute. No exemption law is needed for any public property held as such.' "

The Supreme Court declared in Commonwealth, State Employment Retirement System v. Dauphin County, supra (p. 180):

"It is not to be presumed that the general provisions of Section 201, delegating a portion of the power to tax real estate to municipal subdivisions, was meant to include property owned by the Commonwealth. The legislators did not intend to upset the orderly processes of government by allowing the sovereign power to be burdened by being subjected to municipal taxes. Legislative enactments presumptively affect only private

rights and do not embrace the rights of a sovereign unless the sovereign is explicitly designated or clearly intended. See Baker et al. vs. Kirschnek et al., 317 Pa. 225, 231-232. From this general principle, the rule arises that a municipality cannot successfully tax state-owned property unless it points to a statute clearly authorizing it to do so. See County of Erie v. City of Erie, 113 Pa. 360, 366; Heron v. Pittsburgh, 57 Pa. Superior Ct. 648, 649."

A municipality cannot legally tax State-owned property unless it can point to a statute clearly authorizing it to do so, and, in the instant case, as there is no such special statutory authority before us, we conclude that the assessments levied for the years 1943 and 1944 should be stricken from the record.

The Act of May 29, 1931, P. L. 280, sec. 9, provides that any real estate sold for taxes under said act may be redeemed by the owner or his heirs or legal representatives at any time within two years after such sale. Therefore the purchaser of land at such tax sale obtains an inchoate title during said two-year statutory period and upon the failure of the former owner to redeem the land in that period an absolute title is vested in the purchaser at county treasurer's sale. In the instant case it appears that shortly after the county treasurer's sale held August 3, 1942, at which the land in question was purchased by the Department of Public Assistance, a treasurer's deed bearing that date, duly acknowledged in open court, was delivered to the Department of Public Assistance by the Treasurer of Lycoming County and two years from August 3, 1942, to wit, August 3, 1944, absolute title to said land became vested in the Department of Public Assistance and we are of the opinion that said title relates back to the date of the treasurer's sale, to wit, August 3, 1942.

Properties so purchased by the Commonwealth of Pennsylvania, Department of Public Assistance, are

public properties used for public purposes, in the same manner as moneys given by the legislature for needy recipients are public property used for public purposes. The sovereign Commonwealth is not liable for county or municipal taxes since the funds obtained will be used for the purpose of administering public assistance and thus caring for needy residents of the Commonwealth. It is the duty of the Commonwealth to dispose of property so purchased at such sales as soon as may be done without unnecessary loss to the Commonwealth; it is presumed that it will perform this duty in due season.

In view of the authorities cited and the reasons stated we are of the opinion that title to the land in question in said Borough of Duboistown, formerly owned by Ida Olson, became vested in the Commonwealth of Pennsylvania, through its Department of Public Assistance from the period of the said county treasurer's sale on August 3, 1942, and during the years 1943 and 1944. That said land was held by said Department of Public Assistance as part of its funds and investments which were being used for a governmental function and therefore a public purpose, and it is exempt from any local taxes levied by the said Borough of Duboistown, County of Lycoming, and any of its other subdivisions, and that the local assessments levied against said land for the years 1943 and 1944 taxes should be stricken off and that the money paid by the said Department of Public Assistance for the taxes assessed for the year 1943, which was paid under protest, should be refunded to the Commonwealth of Pennsylvania, Department of Public Assistance.

## Order

And now, to wit, June 12, 1947, the rule issued and directed to the County of Lycoming, the Lycoming County Institution District, Borough of Duboistown, School District of Duboistown, Veneta B. Wheeland, Tax Collector of the Borough of Duboistown, and the

Treasurer of Lycoming County, is hereby made absolute, at the cost of respondents, and the said assessments for local taxes levied by respondents for the years 1943 and 1944 are directed to be stricken off. And it is further directed that the amount of the tax, $37.14, paid for the year 1943, by the Commonwealth of Pennsylvania, Department of Public Assistance, shall be refunded to the Commonwealth of Pennsylvania.