Commonwealth of Pennsylvania, State Employes'
Retirement System *v.* Dauphin County
et al., Appellants.

Argued May 22, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Mark T. Milnor*, Solicitor for School District, with him *Walter R. Sohn*, County Solicitor, *Paul G. Smith*, City Solicitor, and *Spencer G. Hall*, Assistant City Solicitor, for appellants.

*C. James Todaro*, Deputy Attorney General, with him *Claude T. Reno*, Attorney General, for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, June 19, 1939:

The State Employes' Retirement System invested $400,000 of its fund in a bond and mortgage, secured by properties on Market Street and North Fourth Street in the City of Harrisburg. Upon default in interest and taxes, the properties were sold at sheriff's sale to the Commonwealth as purchaser on behalf of the Retirement System. Subsequent thereto, taxes were periodically assessed against this real estate, for the years 1934 to 1937, by Dauphin County, the City, and the School District of Harrisburg, though the title to the realty remained in the Commonwealth. During this time, the properties were rented to another department of the Commonwealth and to private commercial tenants. The Commonwealth did not pay the taxes so assessed, whereupon the City caused an execution to issue against the properties for delinquent taxes, and they were duly advertised for sale. The Commonwealth, through the State Retirement System, moved by petition to strike off the assessments of the taxes for the years above mentioned and the judgments and executions based thereon. The court below granted the prayer of the Commonwealth's petition, and this appeal followed.

May real estate owned by the Commonwealth, or one of its boards, be subjected to taxation by one of its municipal subdivisions? Subject to constitutional limitations, the elementary premise is that the power to tax vests exclusively in the legislature; it may by express direction delegate segments of the taxing power to mu-

nicipal bodies, whose exercise thereof is confined to the power so delegated. This was fully discussed in *Wilson et ux. v. Philadelphia School Dist. et al.,* 328 Pa. 225, at 229. The power, therefore, to determine what property shall be subject to taxation and what shall be immune is traditionally within the province of the General Assembly. *Mott et al. v. Pennsylvania Railroad Co. et al.,* 30 Pa. 9, 28-29. Numerous illustrations of its exercise are set forth in *Butler's Appeal,* 73 Pa. 448, at 451. Our present Constitution in Article IX, Sections 1 [1] and 2,[2] specifically entrusts such power to that body, with enumerated limitations as to exemptions. The Act of May 22, 1933, P. L. 853, Sections 201 and 204, is in strict compliance with the constitutional direction. Section 201 is a general provision subjecting "all real estate" to taxation by municipal bodies. Section 204 exempts property capable of exemption under section 1 of Article IX.[3]

It is not to be presumed that the general provisions of Section 201, delegating a portion of the power to tax real estate to municipal subdivisions, was meant to include property owned by the Commonwealth. The legislators did not intend to upset the orderly processes of government by allowing the sovereign power to be burdened by being subjected to municipal taxes. Leg-

---

[1] "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation *public property used for public purposes,* actual places of religious worship, places of burial not used or held for private or corporate profit, institutions of purely public charity, and real and personal property owned, occupied, and used by any branch, post, or camp of honorably discharged soldiers, sailors, and marines."

[2] "All laws exempting property from taxation, other than the property above enumerated shall be void." And see section 1B.

[3] Including "public property used for public purposes." Under our view of the case, this exemption of itself would be sufficient to justify the action of the court below.

islative enactments presumptively affect only private rights and do not embrace the rights of a sovereign unless the sovereign is explicitly designated or clearly intended. See *Baker et al. v. Kirschnek et al.*, 317 Pa. 225, 231-232. From this general principle, the rule arises that a municipality cannot successfully tax state-owned property unless it points to a statute clearly authorizing it to do so. See *County of Erie v. City of Erie*, 113 Pa. 360, 366; *Heron v. Pittsburgh*, 57 Pa. Superior Ct. 648, 649. In the latter case the court said: "The general statutes of the state, upon the subject of taxing property, undoubtedly refer to private property and not to that owned by the state . . .." The rules as to the property of municipal subdivisions or charities have no applicability here.

Not only is this real estate outside the scope of the general taxing provisions of the Act of 1933, but it has, also, been specifically exempted by Section 17 of the State Employes' Retirement Act.[4] This section furnishes a broad and sweeping exemption from taxation to the Retirement Fund as well as to the benefits and rights accruing to individuals under the provisions of the Act. The intention was to exempt the contributions made to the fund by members and by the Commonwealth as well as the payments to members therefrom.

The retirement fund consists of property in various forms. Not more than ten per cent of the entire amount may be kept on deposit in banks; the remainder is invested in securities and other forms of interest-bearing

---

[4] Act of June 27, 1923, P. L. 858, as amended April 23, 1935, P. L. 49: "The right of a person to a member's annuity, a State annuity, or retirement allowance, to the return of contributions, any benefit or right accrued or accruing to any person under the provisions of this act, and *the moneys in the fund created under this act,* are hereby exempt from any State or municipal tax, and exempt from levy and sale, garnishment, attachment, or any other process whatsoever, and shall be unassignable except as in this act specifically otherwise provided, . . . ."

obligations, under Section 6(5) of the Retirement Act.[5] This mortgage originally taken by the Retirement System was without doubt a constituent part of the retirement fund exempted by Section 17 from tax burdens. The purchase of the real estate, at sheriff's sale, was only incidental to the primary investment, forced on the Commonwealth by the default on the mortgage and the absence of other purchasers at the sheriff's sale. When the security thus became a part of the fund, the legal incidents attaching to the mortgage continued to attach to the real estate, and immunity from taxation was not surrendered by the Commonwealth or the Retirement System.

Appellants argue that the exemption of Section 17 to "the moneys in the fund" does not embrace real estate. The words employed were not meant to be restrictive, and to apply only to cash, deposits, and the like. The context confirms the understanding that the word "moneys" was used comprehensively and synonymously with the word "property," thereby including real estate. See *Newhard v. Newhard,* 303 Pa. 299; and also *Jacobs' Estate,* 140 Pa. 268; *Ostrom v. Datz,* 274 Pa. 375; *Talbot et al. v. Anderson,* 292 Pa. 454; *Williamson's Estate,* 302 Pa. 462. The ordinary presumption against exemption does not apply where the property involved is owned by the Commonwealth, since such property has for reasons of public policy been consistently recognized as free from taxation. See *Mattern v. Canevin,* 213 Pa. 588, 590. The construction in such cases should always be in favor of the Commonwealth.

It is objected that the Constitution forbids the grant of immunity as to the property involved because the premises are partially occupied by tenants for private commercial purposes. Even assuming that the constitutional restriction of Article IX be applicable to prop-

---

[5] Act of June 27, 1923; P. L. 858, as amended May 14, 1929, P. L. 1723, No. 565, section 3.

erty owned by the State, it does not follow that there has been a violation. Section 1 of that Article permits the exemption of public property used for public purposes, and the Act of 1933, as well as Section 17 of the Retirement Act, carries this into effect. Notwithstanding its rental to commercial enterprises, the real estate is in fact being used for a public purpose, that is, it is part of the fund of the State Employes' Retirement System. Even if owned outright by the State, the revenues therefrom could only be devoted to public purposes under the Constitution. So long as the use of the property by the State is public there can be no constitutional violation.

The resulting issue is whether the fund of the Retirement System is property used for a public purpose of the Commonwealth, and whether the real estate here involved is being held by it as a properly acquired part of that fund, rather than as a private business enterprise. Generally, the question whether public property is being used for a public or private purpose under Article IX is resolved by determining whether the particular property is held for governmental or proprietary reasons. Such an inquiry cannot be controlled by the criteria existing years ago. The old landmarks cannot be our exclusive guides, for our social panorama has been extended along broad lines, calling for the institution of new and different relationships between government and members of the general public. The category of governmental functions has been constantly enlarged with new governmental operations to meet changing conditions. Proprietary functions have also increased with the times.

Although the line between the two groups is often shadowy and difficult of demarcation, it is beyond dispute that the performance of the State's obligation to compensate and protect its servants is a governmental function rather than a proprietary one. We stated in *Busser et al. v. Snyder et al.*, 282 Pa. 440, at 453-454,

the reasons why this is a governmental undertaking. Subsequently in *Retirement Board v. McGovern et al.,* 316 Pa. 161, at 164 (note), we traced the development of retirement systems during recent years. The governmental object to obtain efficient public servants need not be stressed at this late date. In the words of President Judge HARGEST of the court below: "The State is vitally concerned in securing the highest grade of employees to perform its work. It perhaps goes without saying that the [superannuation retirement] of employees tends to make those employees happier, more secure and satisfied in their employment and therefore tends to further efficiency. With this principle in view the State has established the Retirement System to provide not only efficient employees but to provide that such employees who have faithfully served the State until old age is upon them may have some competence. . . . The fact that the employees contribute to the fund which is altogether controlled and managed by the State for their benefit makes it no less a governmental function. This fund must partake either of a governmental function or a private enterprise. It certainly is not a private enterprise. It has not been developed to make the State employees a better class of citizens than other employees. It has been established because the economic policy of the State is that the State will thereby secure a better class of employees, and in the economic evolution can we say that this is not a public purpose? We think not."

It is of no consequence today that the duty of performing this function was entrusted to a subordinate governmental agency with corporate powers and with funds partially contributed from the salaries of employes. Although years ago the thought of committing the execution of a function of government to a separate body of this sort was seldom entertained, it is now a common practice and of course does not impair the governmental aspect of the work undertaken. Nor do con-

tributions from employes' salaries render the undertaking semi-private and subject to municipal revenue laws. The outstanding effect of such contributions is to bind the governmental body to its obligation to remunerate the contributors, and thereby to further good government.

The fact that revenue is derived from the property or that it is leased for private use does not preclude the existence of a public use by the Commonwealth. This Court recently held in *Dornan v. Phila. Housing Authority et al.*, 331 Pa. 209, 228, that despite the rental of publicly owned property to private individuals, the exemption of such property from taxation was valid because of the predominant public purpose of slum clearance. See also *City of Phila. v. American Philosophical Society*, 42 Pa. 9; *County of Franklin v. McClean*, 93 Pa. Superior Ct. 165, 171; *National Guard v. Tener*, 13 W. N. C. 310, 311, in all of which, though the property owned by the Commonwealth was wholly or partially rented for private use, the court indicated that such rental would not subject the property to taxation.

Here the chief use of this property by the Commonwealth is as an investment of the retirement fund, and merely a temporary investment. The duty of the Retirement System's officers is to dispose of the property as soon as it is advisable to do so,[6] and the presumption is that this duty is not being violated.

As we have decided the case upon the grounds set forth, it is unnecessary to discuss the other questions raised in the briefs.

Decree affirmed at appellants' cost.

---

[6] Under section 3 of the Act of May 29, 1931, P. L. 214, any real estate purchased by the Commonwealth under the circumstances of the present case "shall be held until such time as the department, board, commission, or officer, who or which hold the mortgage or was charged with the duty of collecting the money covered by the loan, shall believe it advisable to dispose of the same."