## Pittsburgh School District *v.* Allegheny County, Appellant.

Argued March 22, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

reargument refused May 10, 1943.

*Harry M. Montgomery*, with him *Harry V. Bair*, Assistant County Solicitors, with him *Walter P. Smart*, County Solicitor, for appellant.

*N. R. Criss*, School District Solicitor, with him *J. C. McIlwain*, Assistant Solicitor, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, April 19, 1943:

The question presented is whether or not the County of Allegheny can levy a real property tax upon land owned by the School District of Pittsburgh, not now used for any school purpose, and leased for a substantial rental to a private individual for a public parking lot.

This land consists of two plots of ground which formerly contained school buildings and they were exempted from taxation by the County until the year 1939 when the Board for the Assessment and Revision of Taxes for Allegheny County placed them on the lists of taxable property because they were producing revenue. The Grant Street property was valued for tax purposes at $690,080 and the North School property at $84,195. The 1939 tax on both these properties was $6,097.42 and the 1940 tax was $6,097.42. These taxes were not paid and the claims now "constitute a cloud upon the plaintiff's title".

The Court below concluded as a matter of law that the County "is without legal authority to levy taxes on property, title to which is held in the name of the School District of Pittsburgh, a quasi-municipal corporation of the State of Pennsylvania and that the tax levied is illegal and void".

With this conclusion we do not agree. Article 9, sec. 1 of the Constitution provides that "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxa-

tion public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, institutions of purely public charity, and real and personal property owned, occupied, and used by any branch, post, or camp of honorably discharged soldiers, sailors, and marines."

Not only may the General Assembly exempt from taxation public property used for public purposes, but it has also been held that property owned by municipal bodies and used for public purposes is never subject to taxation unless the legislative intent to tax them is clear. See opinion of Justice MITCHELL in *Philadelphia v. Barber,* 160 Pa. 123 at 128, 28 A. 644, and *Pittsburgh v. Subdistrict School,* 204 Pa. 635, 640, 641, 54 A. 463.

The General County Assessment Law of May 22, 1933, P. L. 853, 72 P. S. 5020, provides in sec. 201 and 201a as follows: "The following subjects and property shall, as hereinafter provided, be valued and assessed, and subject to taxation for all county, city, borough, town, township, school and poor purposes at the annual rate: All real estate, to wit: Houses, lands, lots of ground and ground rents, mills and manufactories of all kinds, furnaces, forges, bloomeries, distilleries, sugar houses, malt houses, breweries, tan yards, fisheries, and ferries, wharves, and all other real estate not exempt by law from taxation."

Section 204 of the same act provides: "The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit: (a) All churches, meeting-houses, or other regular places of stated worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same; (d) All schoolhouses belonging to any county, borough or school district, with the ground thereto annexed and necessary for the occupancy and enjoyment of the same; (g) All other public property used for public purposes, with the ground thereto annexed and necessary for the occupancy and enjoyment of the same." 204(1) of this

act provides that ". . . Except as otherwise provided in clause (k) [relating to free public libraries] . . . all property, real or personal, other than that which is in actual use and occupation for the purposes specified in this section, and all such property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity, shall be subject to taxation, except where exempted by law for State purposes, and nothing herein contained shall exempt same therefrom. . . ."

It was said in *County of Franklin v. McClean,* 93 Pa. Superior Court 165, 171, "The General rule is that land, the title to which is in the state, is not subject to taxation for local purposes". Cooley on taxation, 4th ed. sec. 621, states: "Lands belonging to the state are not, therefore, to be entered for taxation, and if they are sold for taxes the sales are void and pass no titles to the purchasers". In *Com. State Emp. Ret. System v. Dauphin County,* 335 Pa. 177, 180, 6 A. 2d 870, this court said: "The legislators in enacting [the General County Assessor Law of 1933] did not intend to upset the orderly processes of government by allowing the sovereign power to be burdened by being subjected to municipal taxes".

The two important facts to be kept in mind in applying the law to this case are these: First, school districts are not sovereignties; they "are but agencies of the state legislature to administer this constitutional duty" of maintaining "a thorough and efficient system of public schools": *Wilson et ux. v. Philadelphia School District,* 328 Pa. 225, 231, 195 A 90. Second, the property of plaintiff School District which has been taxed is not used for public purposes. It is rented commercially and revenue is derived therefrom. The court below found that from the Grant Street lot used for parking purposes, the plaintiff received $21,600 a year and from the North School lot, $6,108 a year.

This fact #2 brings these properties clearly within the above quoted language of clause (1) of sec. 204 of

the Act of 1933, supra, and makes them taxable. The fact that the income from the property is used for school purposes does not support the claim of exemption. For example, a commercial enterprise would not be exempt from taxation because its profits were donated to charity. See *Y. M. C. A. of Germantown v. Philadelphia,* 323 Pa. 401, 412, 418, 419, 187 A 204; and *Ivy Hill Cemetery Company's Appeal,* 120 Pa. Superior Court 340.

Cooley on taxation, supra, sec. 640, says: "If public property is exempt only when devoted to a public use, the question arises as to the effect of receiving an income from public property. This depends, at least to some extent, on the nature and source of the income. The income may be (1) merely incidental to a public use of property, or it may be (2) the direct result of a lease of all the property. If the income is merely incidental, the rule is well settled. Where the primary and principal use to which property is put is public, the mere fact that an income is incidentally derived from it does not affect its character as property devoted to a public use, so as to prevent its being exempt from taxation." . . . "The second class of cases relate to income not incidental to the use of the public property, but the result of a lease of the property or other arrangement whereby revenue is the primary' purpose. As to this class the law is not so well settled. Some cases hold, expressly or in effect, that if an income or profit is derived from public property, not as an incident to its use as a public agency, but as a direct result of a lease of the property or other arrangement whereby revenue is the primary purpose, the property is taxable because not held for a public purpose." Cooley cites nine jurisdictions where the above rule is judicially recognized. Cooley also says, sec. 641: "An exemption of lands owned by a city for public purposes means a present, and not an indefinite, prospective, use." (Citing cases.) 61 Corpus Juris, sec. 367, p. 370, states the rule as fol-

lows: "There is no implied immunity from taxation of property owned by a municipal corporation, but which is not devoted to public or governmental uses, but held by the municipality in its private or commercial capacity and as a source of profit or to serve some mere convenience of the citizens". Citing cases, including *Com. v. Philadelphia R. T. Co.* 287 Pa. 70, 134 A 452.

The case of *Dornan v. Philadelphia Housing Authority,* 331 Pa. 209, 200 A. 2d 834, and *Com. v. Dauphin Co.,* supra, are easily distinguishable from the instant case. In the former case this court said (p. 228), "The public nature of the use of the property also justifies the exemption granted by the act from state and local taxation". This court also said (p. 227), "The eradication of slum areas by the demolition of objectionable dwellings is the dominant background of the Housing Authorities Law". In the latter case, this court said: "Notwithstanding its rental to commercial enterprises, the real estate is in fact being used for a public purpose, that is, it is part of the fund of the State Employees Retirement System. . . . The performance of the state's obligation to compensate and protect its servants is a governmental function rather than a proprietory one".

We cannot agree with the court below that "the vesting of title in the municipal subdivision for lawful purposes cloaks the property with a public use character which never leaves it". If such was the fact the conversion of a public school into a commercial office building or the renting of it for a private school would still not divest it of its "public use character".

The court below also says: "Failure on the part of the School District to levy a tax to meet the taxes imposed by the County of Allegheny or the City of Pittsburgh would result in a paradoxical legal situation that is at once technically wrong and practically impossible of justification. It would be necessary for either the County of Allegheny or the City of Pittsburgh first to

perfect a tax lien, and second to sell the property on a writ. No legal method has been provided to do either of these things. The very idea of tax liens held by one municipal subdivision against another, and the prospect of one municipality selling another's property at sheriff's sale is repugnant to the principle of good government". In *Erie v. School District*, 17 Pa. Superior Court, 33, 38, it was stated: "The execution of the judgment [for a paving assessment against a school district] must be by mandamus upon the public funds held by the school district for public purpose".*

There are many reasons based on sound public policy why school districts and similar agencies of government should not be encouraged to use public property in competition in the same business with private property, to the discouragement of that individual enterprise which produces the revenues by which all governments are supported. For a school district to lease a school building as an office building or as a private school, or to lease a vacant lot for parking purposes, without any liability for taxation on such property, would give such districts an unfair advantage over the private owners of such properties, as it could, because of its exemption from taxes, lease more cheaply than its private competitors. If the district is taxed on such properties the incidence of that tax falls on the tenant and his patrons.

To permit such property to be leased without liability for taxes on it would present to school boards a temptation to rent school district property no longer needed for public purposes and thereby acquire revenues in excess of those which can be raised by legally permissible taxation. Such excess revenues could easily lead to extravagance and waste. This leasing is, of course, preferable to having public property unused

---

* In that case it was held that the city could not maintain an action of assumpsit against a school district to recover the cost of laying a pavement in front of a piece of school district property *exclusively used for public purposes.*

for *any* purpose, but such properties should be sold if not needed for future public use and if they are retained and leased they should bear their proportionate share of the burdens of taxation.

The decree is reversed at appellee's cost.