Pittsburgh Public Parking Authority, Appellant,
*v.* Board of Property Assessment, Appeals and
Review, Appellant.

Argued March 29, 1954.   Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Philip Baskin*, Assistant County Solicitor, with him *Nathaniel K. Beck*, County Solicitor, and *John W. Mamula*, Assistant County Solicitor, for Board of Property Assessment, Appeals and Review of Allegheny County and County of Allegheny.

*Mortimer B. Lesher*, School Solicitor, and *Oscar G. Peterson*, Assistant School Solicitor, for Pittsburgh School Board.

*J. Frank McKenna,* City Solicitor, with him *David Stahl* and *Charles D. McCarthy,* Assistant City Solicitors, for City of Pittsburgh.

*Richard B. Tucker, Jr.,* with him *Charles F. C. Arensberg,* and *Patterson, Crawford, Arensberg & Dunn,* for Pittsburgh Public Parking Authority.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, May 24, 1954:

The subject of inquiry here involved is the validity of a claim of tax exemption of certain garages and parking lots owned by the Public Parking Authority of the City of Pittsburgh, but leased to and operated by private parties. A further question is whether portions of one such garage leased for commercial uses are tax exempt.

The Public Parking Authority of Pittsburgh, incorporated under the Parking Authority Law of June 5, 1947, P. L. 458, made a study of traffic congestion in the City of Pittsburgh as the result of which it decided upon the erection of four parking garages. Having acquired title to the necessary tracts of land for that purpose it erected on one such tract, referred to as site F, a concrete seven-level open deck parking garage, embodied in which structure at the street level are five rooms for stores. On another such tract, referred to as site B, it erected a concrete six-level, open deck parking garage. Because of a shortage in the allocation of steel it has been unable to erect garages on the other two tracts, one referred to as site C and the other as site Y, and those two tracts are now open parking lots. In order to finance the erection of the two garages bonds in the total amount of six million dollars were issued and sold by the Authority.

The Board of Property Assessment, Appeals and Review of Allegheny County refused an application of the Authority for exemption of its four properties from taxation. Thereupon the Authority filed a bill in equity against the Board, the County of Allegheny, the City of Pittsburgh and the School District of Pittsburgh, praying that the Board be restrained from assessing, and the County of Allegheny from levying, taxes upon these properties, and for a decree declaring that they are not subject to taxation by any of the defendants. The court below decreed that all of the properties were exempt except the portion of the garage on site F consisting of the rooms for stores; it dismissed the bill as to site F on the ground of lack of jurisdiction in equity because of that property being taxable in part. The Board, the County of Allegheny, and the School District of Pittsburgh, appeal from the decree exempting the three properties from taxation, while the Authority appeals from the court's refusal to exempt the stores portion of the garage on site F.

It neither is nor can be disputed that Authorities incorporated under the Parking Authority Law are, ordinarily at least, exempt from the payment of any taxes or assessments upon their properties. The Constitution, Article IX, Section 1, authorizes the General Assembly to exempt from taxation public property used for public purposes, and in *McSorley v. Fitzgerald*, 359 Pa. 264, 59 A. 2d 142, we held that the purpose for which such authorities are created constitutes a public use. The General County Assessment Law (Act of May 22, 1933, P. L. 853, Section 204(g)), exempts from all county, city, borough, town, township, road, poor and school tax all public property used for public purposes, and Section 15 of the Parking Authority Law expressly confers tax exemption upon properties of the Authorities. But the present attack

on the Authority's claim for exemption is based upon the fact that it is not itself operating either the two garages or the parking lots but has leased them to private parties who operate them for profit.

On September 14, 1951, the Authority entered into a lease agreement with Parking Service Corporation, a corporation organized under the laws of this Commonwealth and having its principal place of business in the City of Pittsburgh. Two of the principal officers of the Parking Service Corporation now operate some twenty-one parking lots and garages in the City of Pittsburgh. The lease covers the garages on site F and site B and is for a six-year term with an option to the lessee of renewing it for an additional period of six years. There is a fixed annual rental and also a provision for the division of the net profits of operation between the lessee and the Authority according to a somewhat elaborate schedule. The operation of the garages by the lessee is to be subject to the rules and regulations from time to time adopted by the Authority. The Authority fixed the initial rates to be charged for the facilities and agrees that it will consult with the lessee if from time to time it should desire to make any changes therein. Since, as above stated, the Authority has not been able to erect the garages on site Y and site C, it leased those lots to other private parties on January 29th and February 7th, 1952, respectively, but only on a month to month basis at a fixed rental and terminable upon ten days' notice.

That the Authority had the power to lease the garages and the lots is, of course, beyond question. The Parking Authority Law, Section 5(a), expressly states that the purposes of an Authority organized thereunder shall be carried out by it "either in the capacity of lessor or lessee," and Section 5 (b) (4) grants to the Authority the right or power, inter alia,

not only to lease property as lessee but also to lease as lessor any property at any time required to effectuate the purposes of the Authority. But did the leasing of these properties to private parties who operate them for profit destroy their tax exempt status? Although the legislature evidently had the making of such leases in contemplation it did not limit the tax exemption granted by Section 15 of the Act to properties which the Authority might itself operate. The purpose of the Parking Authority Law, as expressed in section 5(a), was to secure "efficient operation of off-street parking facilities, for the fulfillment of public needs in relation to parking," and to establish "a permanent coordinated system of parking facilities, . . .", but there was left to the Authority the selection of the means by which that purpose could best be accomplished. Nevertheless the Board of Property Assessment contends that even were it conceded that the legislature intended the tax exemption to apply to properties of the Authority leased to private parties such intention would run afoul of Article IX, Section 2, of the Constitution, which declares void all laws exempting property from taxation other than the property enumerated in Section 1, namely, property used for public purposes; the Board argues that the properties of the Authority when so leased are no longer used for public purposes. We do not agree with this contention. These properties are public property and, however operated, are being used for a public purpose; their operation by the lessees is for the purpose expressly declared in the Parking Authority Law and which, both in that Act and in the *McSorley* case, have been established as a public purpose. If the Authority, instead of leasing the properties, had made these same lessees its agents to operate the properties and on exactly the same terms as provided in the leases there could be no ques-

tion but that the privilege of tax exemption would not be affected thereby, and yet in such case those engaged therein would obtain a private gain therefrom even if only in the form of salaries, wages, commissions, or a percentage of profits. Without some element of private profit to someone the enterprise could not be conducted at all; the determinative question is whether these public properties are being used for a public purpose. The Authority adopted a resolution stating that "the Authority, after giving careful consideration to the various methods of operating the parking facilities to be erected . . . has determined that it is essential in order to insure to the City of Pittsburgh and to the public the full benefit of the parking facilities that they should be leased to an operator of parking facilities who is both competent and experienced and has sufficient financial resources to deposit security for the performance of his obligation." And it further stated that, "the Authority has made a canvass of qualified operators and has selected the Parking Service Corporation, organized by John Stabile of the City of Pittsburgh, and his associates, who are experienced and financially responsible operators, for the purpose of operating the parking facilities . . . ." By the course thus adopted the Authority was, in the exercise of its judgment, best effectuating the purpose of the legislation, —to provide "efficient operation of off-street parking facilities," and so long as it furnished such service to the public the method of operation by which the end was achieved cannot affect the taxability of its property; it is the result, not the means, which forms the reason and the justification for the exemption of the Authority's property from taxation.

In *Commonwealth of Pennsylvania, State Employes' Retirement System v. Dauphin County*, 335 Pa.

177, 6 A. 2d 870, where real estate owned by the State Employes' Retirement System was leased to private tenants, the court held that this fact did not impair the tax exemption given to such property by statute, saying (p. 183, A. p. 873) that "the real estate is in fact being used for a public purpose, that is, it is part of the fund of the State Employes' Retirement System . . . So long as the use of the property by the State is public there can be no constitutional violation." The court further said (p. 185, A. pp. 873, 874) : "The fact that revenue is derived from the property or that it is leased for private use does not preclude the existence of a public use by the Commonwealth. This Court recently held in *Dornan v. Phila. Housing Authority et al.*, 331 Pa. 209, 228, that despite the rental of publicly owned property to private individuals the exemption of such property from taxation was valid because of the predominant public purpose of slum clearance."

In *Commonwealth v. Dauphin County*, 354 Pa. 556, 47 A. 2d 807, the same conclusion was reached by the court in rejecting the argument that because real estate owned by the State Workmen's Insurance Board was leased to private persons it was not being used for a public purpose.

The two cases thus cited are perhaps not wholly in point here because the leasing of the property of the State agencies there involved, being for the purpose of obtaining revenue therefrom, was apparently held to be, in and of itself, the public use for which the ownership of the property by the agencies was intended. A decision more apposite was that rendered in *New Castle v. Lawrence County*, 353 Pa. 175, 44 A. 2d 589, where it was held that a city park did not lose its tax exemption because it leased certain concession buildings to private licensees. The court said (p. 182, A. p.

593) : "These buildings are part of the park equipment available for the entertainment and refreshment of the public visiting the park, and promote and facilitate the enjoyment of the park for park purposes. . . . If the city directly, instead of by licensees, furnished these benefits it could make a reasonable charge therefor. As it acts in a proprietary capacity, it is immaterial that it finds it more convenient to supply refreshment and entertainment by its licensees: . . . ." So, in *City of Toledo v. Jenkins,* 143 Ohio St. 141, 54 N.E. 2d 656, it was held that, where the city owned an airport, the renting to others of space in buildings to promote aviation by extending service at the airport to all the public using its facilities was a use incidental to the main public purpose and therefore did not impair the privilege of tax exemption enjoyed by the airport, the sole test being whether the purpose of the airport was subserved by such renting.

If the renting to private parties of a portion of the property for the public purpose for which the whole was designed did not subject even the part so rented to taxation, as held in those cases, it necessarily follows that a similar renting of the entire property would not impair its tax exemption.

We are, then, all of opinion that the fact that the properties of the Parking Authority in the present case are leased for operation to private parties deriving profit therefrom instead of being operated by the Authority itself does not, as the court below correctly held, destroy the tax exemption granted them by the Public Authority Law. We are further of opinion, however, that the court was also right in holding that the portion of the garage on site F leased by the Authority for commercial uses did thereby lose its tax exemption. One of the stores in that garage was rented as a restaurant, one as a tailoring establishment, one as a

photography shop, one for the sale of flowers, and one to an electric protective agency. Such leases were authorized, it is true, by Section 5(a) of the 1947 Act, which provided that "The Authority shall have power to lease portions of the first floor of the parking facilities for commercial use where, in the opinion of the Authority, such leasing is desirable and feasible in order to assist in defraying the expenses of the Authority." But it thus appears that, unlike the leases of the garages and parking lots to effectuate the purpose of providing an "efficient operation of off-street parking facilities," these commercial rentals are authorized merely for the purpose of assisting in "defraying the expenses of the Authority." The operation of these stores in the garage on site F does not constitute a use incidental to the public purpose of providing "off-street parking facilities," for which purpose alone the privilege of tax exemption was granted by the Parking Authority Law. It is the use of the *property*, and not the use of the *proceeds from the property* which determines whether tax exemption may constitutionally be granted.

In *Pittsburgh School District v. Allegheny County*, 347 Pa. 101, 31 A. 2d 707, it was held that land owned by a school district was taxable if, instead of being used for any school purpose, it was leased to a private individual for a commercial enterprise, and it was immaterial that the income from the property was used for school purposes.

In *Pittsburgh v. Allegheny County*, 351 Pa. 345, 41 A. 2d 639, it was held that property owned by the City of Pittsburgh was taxable if leased for commercial purposes.

In *Kittanning Borough v. Armstrong County*, 347 Pa. 108, 31 A. 2d 710, it was held that a borough building, a portion of which was leased to a banking

institution, and a public library, which leased one of its floors as a private dwelling, both became taxable as to the portions thereof thus leased for non-public purposes.*

It is clear, therefore, that equity could not enjoin the tax assessment of the garage on site F. Where a property owner denies the power to levy a tax on his property equity affords the remedy, but where there is merely an over-assessment or *inadequate exemption* the sole remedy is by appeal from the assessment as provided by statute: *Dougherty v. Philadelphia,* 314 Pa. 298, 301, 171 R. 583, 584; *First Baptist Church of Pittsburgh v. Pittsburgh,* 341 Pa. 568, 574, 20 A. 2d 209, 212; *Kittanning Borough v. Armstrong County,* 347 Pa. 108, 109, 110, 31 A. 2d 710, 711; *Wynnefield United Presbyterian Church v. City of Philadelphia,* 348 Pa. 252, 253, 35 A. 2d 276, 277. Accordingly the court, while enjoining the defendants from assessing, levying, or collecting any taxes on the garage on site B and on the two parking lots, and while holding that the *portion* of the garage property on site F other than the five stores was also entitled to tax exemption, properly left the Parking Authority, as to that property, to its remedy at law.

The decree is affirmed, the costs to be shared equally by the five parties.

---

* By way of analogy, in the case of charities the rents received from commercial tenants are not exempt from taxation even though they be devoted to the purposes for which the charity was founded; to warrant exemption the property must be used directly for the purposes of the charity and in its operation: *Y.M.C.A. of Germantown v. Philadelphia,* 323 Pa. 401, 187 A. 204; *Presbyterian Church v. Philadelphia School District,* 171 Pa. Superior Ct. 610, 616, 91 A. 2d 372, 374.