Moon Township Appeal.

Argued October 1, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Robert Van Der Voort,* Solicitor, with him *John F. Healy,* and *Van Der Voort, Royston, Robb & Leonard,* for township and school district.

*Maurice Louik,* Assistant County Solicitor, with him *Nathaniel K. Beck,* County Solicitor, and *Philip Baskin,* Assistant County Solicitor, for County and Board of Property Assessment.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 27, 1956:

The problem here relates to the taxability of certain portions of the Greater Pittsburgh Airport. The Board of Property Assessment, Appeals and Review of Allegheny County assessed the property of the Airport for the year 1953 at a total of $12,913,139, of which $5,-451,849 was allocated to land and $7,461,290 to buildings, all of which was placed by the Board in the tax exempt column. The Township of Moon, in which 930 of the 1540 acres of the Airport are located, and the Moon Schools Union School District, appealed to the Court of Common Pleas from this action of the Board, claiming that a large part of the Airport should not have been declared tax exempt. The County of Allegheny, which is the owner of the Airport, intervened in the proceedings. The court below concluded that certain portions of the property which it enumerated were taxable, others not. The Board of Property Assessment and the County of Allegheny appeal from the order of the court to that effect.*

The Greater Pittsburgh Airport contains the usual runways, hangars, and taxi and loading apron areas, also a Terminal Building said to be the largest of its kind in the United States, two outdoor parking lots holding 1200 cars each, an automobile service station and a radar station, together with a number of other structures including two small dwelling houses. The

---

* The Township of Moon and Moon Schools Union School District also filed an appeal, which, however, they have abandoned.

Terminal Building itself is a multi-story building, the first or main floor of which contains the ticket offices for the various air lines and most of the concession areas hereinafter referred to; on the other floors are located the offices of the Weather Bureau, the Civil Aeronautics Administration, and some additional concession areas; the Federal Government also maintains a post office department in the building. Approximately 100 acres of the Airport property are allocated to Federal military use, including the housing of its personnel, and the Commonwealth of Pennsylvania has its own buildings on the Airport.

The concessions above referred to are agreements entered into by Allegheny County as owner of the Airport, whereby it rents large amounts of space in the Terminal Building and area adjacent thereto to private individuals and corporations for the carrying on therein of private business for profit. The agreements provide for the payment to the County of a net minimum amount per month and, in addition thereto, a percentage of the gross sales; the concessionaire also agrees to indemnify the County from all liability for taxes or assessments that may be levied upon it because of the concessionaire's operations. The business activities carried on in the Terminal Building by these concessionaires are as follows: jewelry store, display windows and display areas, drugstore, news stand, 60-room hotel, night club, banquet rooms, coffee shop, cafeteria, cocktail lounge, tavern, service bar and roof patio, sandwich shop, bakery, check rooms, roof garden restaurant and cafe, amusement arcade, barber shop, confectionery, parking garage (indoor), women's apparel shop, garbage and rubbish collection service, dairy bar, toy shop, car rental service, fruit store, wholesale lumber sales office, catering service, insur-

ance agency, taxi service, limousine service, gift shop, motion picture theatre, linen supply service, coin-operated binoculars, parcel lockers, toy sales stand, steel company sales office, private lounge and bar, bank, and real estate office. The outside areas leased to concessionaires are the parking lots, the refreshment stand, comfort station and automobile service station, while the two dwelling houses are rented to private individuals. Of all these activities the court held that only the areas occupied by the coffee shop, cafeteria, sandwich shop, check rooms, barber shop, parking garage, garbage and rubbish collection service, catering service, taxi service, limousine service, and parking lots, were tax exempt.

The legal principles applicable to the situation are entirely clear. Article IX, Section 1, of the Constitution permits the General Assembly to exempt from taxation public property *used for public purposes.* Undoubtedly the portions of the Airport employed in its actual operation—the landing fields, runways, ramps, hangars, ticket offices, waiting room for passengers, management offices, control tower, repair shops and the like—represent a public use which properly exempts them from taxation; this is conceded by all the parties. There is likewise no question but that property the use of which is *reasonably necessary* for the efficient operation of the Airport, even though not indispensable or essential thereto, is also entitled to exemption. Nor can such property be denied exemption merely because it is rented out by the Airport and thereby yields a return which serves to reduce expenses, because, where the primary and principal use to which property is put is public, the mere fact that an income is incidentally derived from it does not affect its character as property devoted to a public use: *Common-*

*wealth of Pennsylvania, State Employes' Retirement System v. Dauphin County,* 335 Pa. 177, 183, 6 A. 2d 870, 873; *New Castle v. Lawrence County,* 353 Pa. 175, 182, 44 A. 2d 589, 593; *Pittsburgh Public Parking Authority v. Board of Property Assessment, Appeals and Review,* 377 Pa. 274, 279, 280, 282, 105 A. 2d 165, 167, 168, 169. On the other hand, however, there is equally no doubt but that property, even though owned by a body ordinarily tax exempt, is taxable if used by it for commercial purposes, or if rented to a lessee for a purely business enterprise and not a public use; this is true even though the rentals or other proceeds from the property are devoted to the tax exempt activities of the lessor: *Philadelphia v. Barber,* 160 Pa. 123, 28 A. 644; *Dougherty, Trustee v. Philadelphia,* 314 Pa. 298, 171 A. 583; *Young Men's Christian Association of Germantown v. Philadelphia,* 323 Pa. 401, 187 A. 204; *Pittsburgh School District v. Allegheny County,* 347 Pa. 101, 31 A. 2d 707; *Kittanning Borough v. Armstrong County,* 347 Pa. 108, 31 A. 2d 710; *Pittsburgh v. Allegheny County,* 351 Pa. 345, 41 A. 2d 639; *Pittsburgh Public Parking Authority v. Board of Property Assessment, Appeals and Review,* 377 Pa. 274, 282-284, 105 A. 2d 165, 169; *West View Borough Municipal Authority Appeal,* 381 Pa. 416, 113 A. 2d 307; *Freeport School District v. County of Armstrong,* 162 Pa. Superior Ct. 237, 57 A. 2d 692.

It was said in the *West View Borough Municipal Authority Appeal,* (p. 420, A. p. 309) : "The controlling test is, not merely whether the property or part of it has been rented out, but whether the use of the part so leased is for a public or a private purpose. It is the use of the property, and not the use of the proceeds from the property, which determines whether tax exemption may constitutionally be granted."

Applying these principles, then, to the present controversy, the question resolves itself into one of fact rather than of law, namely, did the use of such portions of the Airport property as were declared taxable by the court below constitute a reasonably necessary and incidental part of the Airport itself if it was properly to function? That these commercial activities all served the *convenience* of the traveling public is undisputed, but that is not enough to warrant a tax exemption; it must be shown that they were needed for the efficient operation of the Airport as a public instrumentality and thereby partook of the character of its own public use. Based on that criterion it would seem clear that the court properly held taxable those areas occupied by concessionaires which could not, by any proper interpretation of "reasonable necessity," be held to enjoy a tax exempt status, even though their activities may have been similar to those frequently associated with large airports. The court pointed out that while the service of food and refreshment was no doubt an essential activity for the benefit of the patrons of the Airport, it would not include as a reasonable necessity night clubs, cocktail lounges, and the like, and therefore the night club, cocktail lounge, service bars, tavern, roof garden restaurant and cafe, banquet rooms, private lounge and bar, were taxable. Further, that the jewelry store, display windows and areas, drugstore, news stand, bakery, amusement arcade, confectionery, women's apparel shop, dairy bar, toy shop, car rental service, fruit store, gift shop, motion picture theatre, linen supply service, coin-operated binoculars, and toy helicopter sales stand, were nothing more than attractions for the patrons; therefore they also were taxable. That, as there was no reasonable necessity at the Airport for the bank, the lumber sales office, the

insurance agency, the steel company sales office, or the real estate office, all these were likewise taxable. That the hotel was taxable in view of the proximity of other suitable accommodations for travelers who, because of delay in making connections, might be required to stay overnight or for an extended period during the day. That while the parking areas were reasonably required for passengers going to and from the Airport in cabs and automobiles, no such necessity was shown for the refreshment stand, comfort station, or automobile service station within that area, nor for the dwelling houses, all of which were therefore taxable.

Following the conclusions thus reached the court ordered that the Board of Property Assessment, Appeals and Review of Allegheny County restore those parts of the property to the taxable classification for the year 1953 and subsequent years with an evaluation in proportion to the valuation placed on the entire property for the respective years. This was in accordance with the established rule that where a property is devoted partly to public and partly to commercial uses it may be divided for the purpose of taxing the part of it engaged in business use and exempting the part devoted to public use: *Philadelphia v. Barber*, 160 Pa. 123, 28 A. 644; *Dougherty, Trustee v. Philadelphia*, 314 Pa. 298, 305, 171 A. 583, 586; *Kittanning Borough v. Armstrong County*, 347 Pa. 108, 31 A. 2d 710; *West View Borough Municipal Authority Appeal*, 381 Pa. 416, 113 A. 2d 307.

The order of the court is affirmed.

DISSENTING OPINION BY MR. JUSTICE JONES:

I dissent from the decision of the majority affirming *in toto* the lower court's exclusion of certain specified uses of portions of the Greater Pittsburgh Airport

terminal from exempt classification on the County's property assessment rolls.

The majority's approach to the problems involved deprives the taxpayer, viz., the County, the owner of the airport and its terminal building, of appellate review of the property assessments for taxation purposes directed to be made against it by the order of the court below. Thus, the opinion for this court deems the answers to the issues involved as being conclusively determined by the lower court's factual findings to which finality is accorded on the ground that there is evidence to support them. Actually, the material facts are not in dispute. What is called for is a conclusion of law as to whether, under the established facts, the contested uses of the airport property serve a public purpose or are reasonably essential to a public service. The learned court below has correctly observed that "the mere rental of public property to private parties to operate for private gain is not a bar to a claim for exemption and . . . the question turns on whether the use to which the property is put is actually a public one." After referring to the statutory powers specifically conferred on Allegheny County by Sections 2401 and 2402 of the Second Class County Code of 1953, P. L. 723, the court below further noted that "Appellants [appellees here] do not contend that the operation of a municipal airport is not a public use. They narrow the issue to a question of whether certain operations conducted therein are within that public use."

In treating with the question of tax exemption of publicly owned property, the rule is exactly the opposite to that applicable in the case of a private citizen. With the latter, *taxation* is the rule and exemption the exception whereas in the case of a county *exemption* is the rule (see The General County Assess-

ment Law of 1933, P. L. 853) and taxation the exception. Consequently, while a private citizen claiming exemption from taxation has the burden of showing clearly that his claim comes within a specific statutory provision, the burden is upon one asserting that a county's property is subject to taxation to prove its taxability.

The exemption from taxation thus attaching presumptively to county-owned property should be faithfully respected especially where the hearing judge was in such obvious doubt, as in the case of the 60-room hotel in the terminal building, whether that portion of the property should be accorded tax-exempt status as being essential to the proper promotion of the public use to which the terminal building is devoted. After conceding that "The 60-room hotel comes closer to the line of necessity . . .", the court below went on to say,— "However, in view of the proximity of other suitable accommodations for the traveler who because of delay in making connections is required to stay overnight, or for an extended period during the day and who may need rest, which in air travel is unusual except during occasional periods of dense fog, I would rule it without the exempt class. A large motel is within five minutes of the Airport and the downtown Pittsburgh hotels within thirty minutes of it with adequate ground transportation available."

It is plain enough that the court thus denied tax exemption to the portion of the terminal building utilized by the 60-room hotel because there happens to be other sleeping accommodations near the airport. The issue was, therefore, not decided on the basis of whether the maintenance of hotel accommodations in the airport terminal for aircraft passengers was using the property for the authorized public aviation purpose.

The fact that the operation of the terminal hotel was left by the county to a concessionaire does not deprive the use of its public nature: *Pittsburgh Public Parking Authority v. Board of Property Assessment, Appeals and Review,* 377 Pa. 274, 279-282, 105 A. 2d 165. The testimony in the instant case established that airport hotels are being maintained by municipalities elsewhere for the accommodation of the air-travelling public. Instances could be multiplied many times where hotel facilities available to airplane passengers at the Greater Pittsburgh Airport are not only a convenience but a necessity. Yet, the majority of the court approve the action of the court below on the briefly stated ground "That the hotel was taxable in view of the proximity of other suitable accommodations for travelers who, because of delay in making connections, might be required to stay overnight or for an extended period during the day."

A number of the other uses of portions of the terminal building, such as the news stand, drugstores, etc., which have been made taxable, are no more than appropriate incidental services to the main public service of the airport. However, I shall not take the time to enumerate them. For present purposes, it is sufficient to observe that to hold that a private commercial motel on a public highway near the airport supplies the need for sleeping or resting accommodations for arriving or departing airline passengers stretches one's imagination beyond the breaking point.

What may be presently noted is that assessments made as a result of the order now affirmed by this court will not preclude a re-examination of the subject-matter upon a subsequent triennial assessment. Additional proofs can then, and no doubt will, be adduced to demonstrate beyond reasonable dispute that many

of the presently assessed uses of the terminal property are in furtherance of the authorized public use of the airport.

Mr. Justice MUSMANNO joins in this dissent.