## Southeastern Pennsylvania Transportation Authority Appeal

*Ralph B. D'Iorio* and *William T. Coleman,* for appellant.

*Louis B. Beatty, Jr., Alvin S. Ackerman, Peter J. Nolan* and *George H. Class,* for appellees.

CATANIA, J., May 3, 1973.—This case involves appeals taken by the Southeastern Pennsylvania Transportation Authority (SEPTA) from the denial of SEPTA's claims for exemption from real estate assessments before the Board for the Assessment and Revi-

sion of Taxes of Delaware County. The parties, by stipulation, have agreed to the following facts:

1. SEPTA was created pursuant to the Metropolitan Transportation Authorities Act of August 14, 1963, P. L. 984, 66 PS §2001, et seq., to serve the public purpose of providing mass transportation to the residents of the several counties comprising southeastern Pennsylvania, the Counties of Bucks, Chester, Delaware, Montgomery and the City and County of Philadelphia.

2. Pursuant to, and in accordance with, the public purpose expressed in the Metropolitan Transportation Authorities Act of 1963, SEPTA provides public transportation to the residents of southeastern Pennsylvania and in so doing, SEPTA operates without profit.

3. Pursuant to 66 PS §2004(a), SEPTA is a body corporate and politic and is an agency and instrumentality of the Commonwealth exercising the public power of the Commonwealth and is in no way deemed to be an instrumentality of any city or county or other municipality or engaged in the performance of any municipal function.

4. On September 30, 1968, SEPTA acquired the premises involved in these appeals from the preexisting private transportation company, the Philadelphia Transportation Company, pursuant to SEPTA's power, 66 PS §2004(d).

5. The premises involved in 1969 term, no. 3778, Sherbrook Boulevard, are and have been, at all times relevant to this appeal, used as a bus loop and contain employe toilet facilities.

6. The premises involved in 1969 term, no. 1440, Victory Road, are, in part, leased to SEPTA's Red Arrow Division which operates the transportation

facility formerly owned by the Philadelphia Suburban Transportation Company, in part used for SEPTA employe-parking and, in part, vacant.

7. The premises involved in 1969 term, no. 1442, that portion of the Sixty-ninth Street Terminal Building which SEPTA acquired from the Philadelphia Transportation Company includes rail facilities, station platforms, passenger corridors, SEPTA cashier stands, SEPTA change booths, bus loops, a bus terminal, SEPTA employe and passenger parking lots, SEPTA's loading dock, SEPTA storage area, SEPTA employe toilets and lockers together with areas leased to concessionaires and tenants.

8. The premises involved in 1969 term, no. 1441, 913 Main Street, include a building, a part of which is used as a SEPTA trolley and bus terminal. In addition, pursuant to 66 PS §2028, SEPTA leases a portion of the premises for use by a cab company. Further, a portion of the building presently vacant has been, and shall be, used as a restaurant when a suitable concessionaire is found and granted a concession pursuant to 66 PS §2028.

9. Pursuant to 66 PS §2028(f), SEPTA, for consideration, has granted concessions located within the Sixty-ninth Street Terminal Building.

10. Pursuant to 66 PS §2028(g), SEPTA, for consideration, has leased certain areas within, or adjacent to, the Sixty-ninth Street Terminal Building.

11. The Township of Upper Darby is a township of the first class and seeks to impose real estate taxes upon SEPTA-owned property under its general real estate taxing authority pursuant to the Act of June 24, 1931, P. L. 1206, as amended, 53 PS §56709, et seq.

12. The School District of Upper Darby is a school district of the second class and seeks to impose real

estate taxes upon SEPTA-owned property under its general taxing authority pursuant to the Act of March 10, 1949, P. L. 30, 24 PS §6-662, et seq.

13. The County of Delaware is a county of the second class A. The County of Delaware and the Institution District of the County of Delaware seek to impose real estate taxes upon SEPTA-owned property under their general taxing authority.

14. The Borough of Darby seeks to impose real estate taxes upon SEPTA-owned property under its general real estate taxing authority.

15. The Darby Borough School District, now the Darby-Colwyn Joint School District, is a school district of the third class and seeks to impose real estate taxes upon SEPTA-owned property under its general real estate taxing authority.

The problem relates to the taxability of certain properties owned by SEPTA. SEPTA contends that:

"The County, School Boards, Borough and Township lack statutory authority to assess and impose real estate taxes upon property owned by SEPTA, an instrumentality and agency of the Commonwealth, and

". . .

"SEPTA is exempt from assessment and imposition of taxes pursuant to Section 39 of the Metropolitan Transportation Act (66 P.S. §2039)."

The school districts, township, borough and county contend that only those portions of the properties which are actually used by SEPTA for public transportation purposes are exempt. Pursuant to this approach, the School District of Upper Darby and the Township of Upper Darby have agreed that appeal no. 3778 of 1969 concerning the bus loop and employe toilet facilities at Sherbrook Boulevard must be sustained

because the property is used exclusively for public transportation purposes.

We agree that only the property owned by SEPTA which is used for public purposes and is reasonably necessary for the efficient operation of the public transportation system is exempt: Moon Township Appeal, 387 Pa. 144 (1956); Moon Township Appeal, 425 Pa. 578 (1967).

The School Districts of the Township of Upper Darby and the Borough of Darby have the power to tax pursuant to the Public School Code of March 10, 1949, P. L. 30, as amended, 24 PS §6-672. The Township of Upper Darby's power to levy a tax is found in section 1709 of the First Class Township Code of June 24, 1931, P. L. 1206, as amended, 53 PS §56709. The Borough of Darby and Delaware County also have the power to tax under their general real estate taxing authority. The general taxing authorities of the political subdivisions are sufficient to impose a tax on property owned by an instrumentality and agency of the Commonwealth which does not qualify for an exemption as more fully discussed below: Pennsylvania Turnpike Commission v. Fulton County, 195 Pa. Superior Ct. 517 (1961).

SEPTA contends that the clear holding of State Employes' Retirement System v. Dauphin County, 335 Pa. 177 (1939), is that a political subdivision cannot assess or levy taxes upon the real estate owned by an agency of the Commonwealth without specific statutory authority.

It is true that an authority such as SEPTA is an agency and instrumentality of the Commonwealth and is, therefore, clothed with the Commonwealth's sovereignty: Commonwealth v. Erie Metropolitan Transit Authority, 444 Pa. 345 (1971). Also, in the

absence of a statute to the contrary, public property used for public purposes is exempt from taxation and from assessments for improvements and no express exemption law is needed: Dornan v. Philadelphia Housing Authority, 331 Pa. 209, 200 Atl. 834 (1938). The statutory authority relied upon to tax property used for the public purpose must demonstrate clearly and unequivocally the legislative intent to remove the exemption: Southwest Delaware County Municipal Authority v. Aston Township, 413 Pa. 526, 534 (1964).

The case before this court is, however, factually distinguishable from the cases which have required statutory authority. All of the above-mentioned cases, including State Employes' Retirement System v. Dauphin County, dealt with situations in which the instrumentality or municipal authority sought to be taxed was, in fact, using the property in question for a public purpose and authorized use. When a tax is imposed under such circumstances, the taxing authority must point to a specific statute granting it authority to tax real estate owned by an agency of the Commonwealth which is, in fact, being used for public purposes. However, the same stringent requirement is not necessary if the agency or instrumentality is not using the property for a public purpose and authorized use.

This distinction was touched upon by the court in Commonwealth v. Erie Metropolitan Transit Authority, supra, at page 350:

"Appellant was created to operate a mass transportation system in metropolitan Erie. It was organized under an act of the legislature which declared that authorities created under it will be 'for the benefit of the people of the Commonwealth of Pennsylvania, for the increase of their commerce and prosperity, and for the improvement of their health and living condi-

tions.' Moreover, authorities so organized, declared the legislature, 'will be performing essential governmental functions.' *There is no contention that ETA in the case at bar is not performing such a function.* It makes little sense to say that the legislature intended that a municipal corporation so engaged should be taxed on an indispensable aspect of that very function, namely, its use of liquid fuel." (Italics supplied.)

When the contention has been made, as in this case, that the property in question is not being used for public purposes, the courts have, after determining the portions which are being used for activities other than authorized public purposes, denied the right of exemption to such portions: Pennsylvania Turnpike Commission v. Fulton County, 195 Pa. Superior Ct. 517 (1961); Pennsylvania Turnpike Commission Appeal, 50 D. & C. 2d 563 (1970); Bensalem Township School District v. Bucks County Board of Assessment and Revision of Taxes, 17 Bucks 333 (1967).

In Pennsylvania Turnpike Commission v. Fulton County, supra, the Turnpike Commission contended, as does SEPTA, that regardless of the use such property may be put to, once land is acquired by it, no taxing body may impose any tax on such land, since it is an instrumentality of the Commonwealth and performing an essential governmental function. The court rejected this contention, holding that before any property may be exempt from taxation it must be used for public purposes, the purposes provided in the act of legislature. The court also pointed out that the case, as is this case, was not governed by the rule applied in State Employes' Retirement System v. Dauphin County, supra, if the land was not being used for any public purpose and if the land did not qualify, it was subject to tax assessment under the county's general taxing authority.

The next step, therefore, is the examination of the public purpose for which SEPTA was created and the establishment of criteria to be used in a judicial determination of whether or not the property owned by SEPTA is being used for a public purpose necessary for its operation of a transportation system.

Article VIII, sec. 2, of the Pennsylvania Constitution, previously Article IX, sec. 1, permits the General Assembly to exempt, by law, from taxation:

"(iii) That portion of public property which is actually and regularly used for public purposes; . . ."

Section 204 of the General County Assessment Law of May 22, 1933, P. L. 853, 72 PS §5020-204, exempts from local taxation, including all county, city, borough, town, township, road, poor and school tax:

"(g) All . . . public property used for public purposes, with the ground thereto annexed and necessary for the occupancy and enjoyment of the same." ,

The General Assembly did pass legislation in the form of the Metropolitan Transportation Authorities Act of August 14, 1963, P. L. 984, sec. 1, 66 PS §2001-2043, permitting the creation of transportation authorities in each metropolitan area which resulted in the formation of SEPTA. Pursuant to the above-mentioned constitutional and statutory authority, the General Assembly provided an exemption provision in section 2039 as follows:

"(a) The effectuation of the *authorized purposes* of any authority created under this act shall and will be, in all respects, for the benefit of the people of the Commonwealth, for the increase of their commerce and prosperity and for the improvement of their health and living conditions, and since such authority will be performing essential government functions in effectuating such purposes, it shall not be required to pay any property taxes or assessments, of any kind or

nature whatsoever, now in existence or to be enacted in the future, whether imposed by the Commonwealth or by any political subdivision thereof, or by any other taxing authority, and the bonds issued by such authority, their transfer, and the income therefrom (including any profits made on the sale thereof), shall at all times be free from taxation within the Commonwealth." (Italics supplied.)

*The exemption granted by the General Assembly is not a blanket exemption from all taxation but rather an exemption for the authorized purposes which involve the operation and maintenance of a transportation system in the metropolitan area.* Activities not geared to public purposes' use would be beyond the scope of the power of the General Assembly to grant an exemption from taxation as provided in the Constitution and implemented by statute. The public use and authorized purposes of an authority created by the Metropolitan Transportation Authorities Act being the operation of a transportation system, real estate not being used or reasonably necessary for the operation of a transportation system cannot qualify for the exemption.

The second phase of the exemption issue is the establishment of the proper guidelines to determine whether the property is being used for purpose of a transportation system.

The applicable law is clearly set forth in the 1956 Moon Township Appeal, supra, which principles were reiterated in the 1967 Moon Township Appeal, supra. That the business activities of the concessionaires, tenants and SEPTA, which include a delicatessen, newsstand, shoe repair, gifts-cards, check-cashing, laundry, bootblack, restaurant, barber shop, pizza stand, bakery, card shop, storage area and United States Post Office may serve the convenience of the

public is not the controlling ingredient for determining the qualification for exemption. It must be shown that the activities were needed for the efficient operation of SEPTA as a transportation authority for the public use and thereby partook of the character of its own public use: Moon Township Appeal, 387 Pa. 144, at page 150 (1956). If the activities or services provided by the concessionaires, tenants or SEPTA itself are not reasonably necessary for the efficient operation of SEPTA as a transportation authority, then those areas so occupied cannot enjoy a tax exempt status.

The Commonwealth Court in Reading Municipal Airport Authority v. Schuylkill Valley School District, 4 Comm. Ct. 300, 286 A. 2d 5 (1972), after stating the constitutional and statutory authority for exemptions as set forth above, stated supplementary principles helpful in determining whether a property in a particular instance qualifies or should be taxed:

"(I) A real property tax may be levied upon land owned by a public body not used for a public purpose but leased to a private individual for a commercial purpose. Pittsburgh School District v. Allegheny County, 347 Pa. 101, 31 A. 2d 725 (1943); Pittsburgh v. Allegheny County, 351 Pa. 345, 41 A. 2d 639 (1945);

"(II) public property used for a public purpose is entitled to be exempted although persons using the facility are required to pay reasonable charges for refreshment or special entertainment, and this is so whether the public body furnishes those benefits directly or through licensees, New Castle v. Lawrence County, 353 Pa. 175, 44 A. 2d, 589 (1945);

"(III) indeed, the fact that properties of a public body are leased to private parties deriving profit therefrom instead of being operated by the body will not defeat the exemption if the properties are being used for the specifically authorized public purpose for which

they were acquired, Pittsburgh Public Parking Authority v. Board of Property Assessment, 377 Pa. 274, 105 A. 2d 165 (1954);

"(IV) it is the use of the property and not the use of the proceeds from the property that determines whether tax exemption may constitutionally be granted, West View Borough Municipal Authority Appeal, 381 Pa. 416, 113 A. 2d 307 (1955); Freeport School District v. Armstrong County, 162 Pa. Superior Ct. 237, 57 A. 2d 692 (1948);

"(V) that property used commercially serves the convenience of public users will not justify an exemption nor will the fact that the use is not indispensable or essential thereto defeat exemption; the test is whether the property's use is reasonably necessary for the efficient operation of the facility, Moon Township Appeal, 387 Pa. 144, 127 A. 2d 361 (1956);

"(VI) it is a judicial question for the ultimate determination of the courts as to whether the use is public and hence entitled to exemption, Dornan v. Philadelphia Housing Authority, 331 Pa. 209, 200 A. 834 (1938); McSorley v. Fitzgerald, 359 Pa. 264, 59 A. 2d 142 (1948)." Ibid at page 7.

The final phase is the application of these principles to the facts of this case. The parties, realizing that should SEPTA prevail on the legal issue of the lack of taxing authority or exemption under section 39 of the Metropolitan Transportation Authorities Act of August 14, 1963, 66 PS §2039, that complex and possibly lengthy pretrial preparation and a protracted trial or finding on subsidiary issues raised by the litigation would be avoided, stipulated that a court determination first be made on SEPTA's claims. This court has determined that SEPTA cannot avail itself of the exemption unless the use of the real estate which it owns is reasonably necessary for the efficient opera-

tion of its authorized purpose, the operation of a transportation system.

A factual study must now be made of the properties and all portions of property owned by SEPTA and used by SEPTA itself, concessionaires or lessees to determine what properties, if any, do not qualify for the exemption and are therefore taxable by the school districts, township, borough and county under their general real estate taxing authorities. Factors for consideration will be, inter alia, the arrangements, if any, made between SEPTA and the various concessionaires and lessees; the measure of control by SEPTA; the location of similar services in the general vicinity; and the benefits, if any, of the particular activity to the operation of a transportation system.

A determination will then be made, considering all the circumstances, as to whether each property or portion of property is reasonably necessary to the efficient operation of a transportation system for public use.

## ORDER

And now, to wit, May 3, 1973, it is ordered and decreed that:

1. Property owned by SEPTA which is used by SEPTA, tenants or concessionaires and is not reasonably necessary for the efficient operation of a public transportation system is taxable under the general taxing authority of the school districts, township, borough and county.

2. A hearing is set for June 7, 1973, at 10 a.m., in Court Room No. 1, Court House, Media, Delaware County, Pa., at which time testimony, regarding the reasonable necessity of the various properties involved for the operation of a public transportation, may be presented.