# Pennsylvania Bar Association Endowment v. Robins

*F. Brewster Wickersham*, for plaintiff.

*James S. Bowman*, Assistant City Solicitor, *Spencer G. Hall*, City Solicitor, for City of Harrisburg.

*Mark T. Milnor*, for Harrisburg School District.

*R. Dixon Herman*, for Dauphin County.

KREIDER, J., December 29, 1955.—Plaintiff, Pennsylvania Bar Association *Endowment* (sometimes hereinafter called "endowment") by its complaint in equity seeks to have this court enter a decree directing the plaintiff's real estate located at 401 N. Front Street, Harrisburg, be removed from the taxable list and placed on the tax exempt list of the City of Harrisburg, that the tax assessments for the years 1950 to 1953 inclusive be declared void and defendants be restrained from collecting taxes on said real estate for those years and in the future. Defendants are the members of the Council of the City of Harrisburg and the Board of Revision of Taxes and Appeals, the Board of Dauphin County Commissioners, and the Board of School Directors of Harrisburg.

Plaintiff-endowment contends, inter alia, that it is a purely public charity and therefore entitled to *total* tax exemption under article IX, sec. 1, of the Constitution of Pennsylvania and article II, sec. 204, of The General County Assessment Law of May 22, 1933, P. L. 853, as amended by the Act of May 3, 1943, P. L. 158, 72 PS §5020-204. Defendants contend that plaintiff is not entitled to tax exemption within the purview of the Constitution or the said statutes because it is not a purely public charity and that even if it is, it has forfeited its rights to exemption by its failure to use said premises in furtherance of its avowed corporate purposes and by entering into a retroactive "nonexclusive license" with the Pennsylvania Bar *Association* under which the latter is using about 70

percent of the premises and pays the operating expenses of the entire building.

When plaintiff-endowment was notified by the several taxing authorities that its property would be removed from the tax exempt list, it filed a protest and was granted a hearing by the Board of Revision of Taxes and Appeals of the City of Harrisburg. It was agreed by all parties that since plaintiff was not challenging the assessed valuation placed upon the real estate, no appeal would be taken from the action of defendants but a complaint in equity seeking an injunction would be substituted therefor. Subsequently, on May 1, 1950, this complaint was filed and preliminary objections were made thereto. On April 14, 1953, an amended complaint was filed to which defendants made a responsive answer. A hearing was held before the chancellor, after which the parties filed requests for findings of fact and conclusions of law, which were argued before the court en banc. Thereafter, protracted negotiations ensued relative to a settlement of this controversy but to no avail. Consequently, the chancellor has considered all the said requests, which he will treat as suggestions and from the evidence makes the following

## Findings of Fact

1. Plaintiff, Pennsylvania Bar Association Endowment, is a nonprofit corporation, incorporated under the laws of Pennsylvania by decree of the Court of Common Pleas of Dauphin County dated November 12, 1946, and recorded in the office of the Recorder of Deeds in Charter Book "S", page 122.

2. Defendants constitute the several taxing authorities in which is vested the authority to impose local taxation on real estate for city, county and school purposes within the City of Harrisburg and County of Dauphin.

3. The avowed purpose for which plaintiff-endowment corporation was formed is stated in its charter as follows:

"The receipt of gifts, bequests and devises to be used for the advancement of jurisprudence and the promotion of the administration of justice and uniformity of judicial decision throughout the Commonwealth of Pennsylvania, exclusively through education and scientific research; the acquisition for such use of real and personal property and the holding, administering and disposition thereof and the doing of any and all things necessary or incident to the accomplishment of the foregoing, provided, however, that none of the funds, property or income of the corporation shall be used in attempting to influence legislation by the carrying on of propaganda, or otherwise, or for the benefit of any private member of the corporation or individual."

4. The Pennsylvania Bar *Association* is a nonprofit corporation, incorporated under the laws of Pennsylvania by decree of the Court of Common Pleas of Dauphin County dated July 1, 1895, and recorded in the office of the Recorder of Deeds in Charter Book "F", page 6.

5. The avowed purpose for which the Pennsylvania Bar Association was formed is stated in its charter as follows:

". . . to advance the science of jurisprudence; to promote the administration of justice; to secure proper legislation; to encourage a thorough legal education; to uphold the honor and dignity of the bar, to cultivate cordial intercourse among the lawyers of Pennsylvania; and to perpetuate the history of the profession and the memory of its members, and such kindred purposes as the Association may from time to time determine, . . .": Vol. 1, p. 410, sec. 2, First Annual Report of Pennsylvania Bar Association (1895).

6. One of the *present day purposes* of the Pennsylvania Bar Association is "to secure proper legislation": Vol. 59, p. 529, art. I, Penna. Bar Assn. Rep., 1953.

7. Plaintiff-endowment purchased the premises located at 401 North Front Street, Harrisburg, by deed dated August 2, 1948, and thereupon said real estate was placed on the tax exempt list by the local taxing authorities.

8. Subsequently, plaintiff was duly notified that the property had been removed from the tax exempt list and would be assessed for city, school and county purposes at a valuation of $31,500.

9. Pursuant to said notice, a statement covering the Harrisburg 1950 City Tax in the gross amount of $441 was rendered to plaintiff, together with the tax statements of the other taxing authorities.

10. Upon the premises is erected an old colonial mansion, commonly known as "The Maclay Mansion", built in 1792 by William Maclay, one of the first United States Senators from Pennsylvania.

11. The premises consist of a building fronting on Front Street 104.2 feet and of a depth along South Street of approximately 67 feet.

12. Since its acquisition, the building has become the headquarters of the Pennsylvania Bar *Association* and is used by it and its various committees and by the group insurance fund of the said association.

13. The Pennsylvania Bar Association has its secretarial offices in a large room on the first floor and its committees frequently use the other room on that floor.

14. The two rooms on the second floor have not been utilized except as a depository for the furniture and portraits that have been contributed to the endowment. The southern room on the second floor contains an antique clock and desk formerly owned by Governor Wharton of Pennsylvania, contributed by his descen-

dant, The Honorable George Wharton Pepper, whose portrait hangs in this room. An oriental rug, a fireside chair, a small table, a small music stand and two sofas are also in this room. One sofa was formerly owned by William Maclay, the builder of the house. The northern room on the second floor contains an oriental rug, one sofa, one chair and is adorned by the portrait of The Honorable Robert T. McCracken, president of the endowment and past president of the Pennsylvania Bar Association. In the hallway outside these two rooms hangs the portrait of the late Chief Justice of Pennsylvania, William I. Schaffer.

15. There are three rooms on the third floor. The largest is not used except on special occasions by the Pennsylvania Bar Association. It contains a large table, a few chairs and serves as a depository for a small number of miscellaneous books owned by the endowment. The other two rooms on this floor are used for the offices of the group insurance fund of the Pennsylvania Bar Association.

16. The fourth floor is the attic, consisting of "three or four rooms", which are used by the Pennsylvania Bar Association for the storage of records and other miscellaneous material.

17. The Pennsylvania Bar Association has the use of the plaintiff-endowment's premises by virtue of a "nonexclusive license" dated April 12, 1950 (18 days prior to the filing of plaintiff's original complaint on May 1, 1950), in which the parties declared it should be effective as of July 1, 1949.

18. This "license" (sometimes referred to as a lease by plaintiff's witnesses) was executed subsequent to the time the Pennsylvania Bar Association established its headquarters in the building and subsequent to receipt of a letter from the City Assessor of Harrisburg, B. Edward Taylor, dated November 10, 1949, questioning the exemption of the aforesaid real estate

from real property taxes and enclosing a questionnaire therewith soliciting certain information, which questionnaire plaintiff answered.

19. The premises in question were dedicated on January 6, 1950, at which time the Honorable Robert T. McCracken, President of the Pennsylvania Bar Association Endowment, presented to The Honorable John McI. Smith, President of the Pennsylvania Bar Association "the right to the use and occupancy of this lot or piece of ground with the messuage or tenement thereon erected, together with full right of ingress and agress to and from the same, at all times hereafter forever, or for so long as the said Association shall behave itself well", in a ceremony entitled: "Exercises at the Formal Dedication of the New Headquarters of the Pennsylvania Bar Association, 401 North Front Street, Harrisburg, Pennsylvania."

20. While no rental is provided for in the "license" agreement, consideration of value is received by the Pennsylvania Bar Association Endowment from the Pennsylvania Bar Association whose responsibility it is to pay all normal operating expenses, including heat, electricity, water, telephone service, janitorial and custodial services.

21. All of the funds by which the Pennsylvania Bar Association Endowment was originated were donated by individual members of the bar, by local bar associations existing in various counties of Pennsylvania and by the Pennsylvania Bar Association.

22. All officers and directors of the Pennsylvania Bar Association Endowment have served, and are now serving, without pay.

23. Pennsylvania Bar Association Endowment, plaintiff, has no employes. The Executive Secretary of Pennsylvania Bar Association, Mrs. Barbara Lutz, "keeps the check book, writes the checks and keeps the records" of the endowment on a gratuitous basis.

24. Plaintiff at no time has received any income as such from any source whatsoever, other than from investments in Government bonds and the payment by the association of the light, heat, water, electricity, telephone, janitor and custodial services required for the said building.

25. Plaintiff has no indebtedness whatsoever, other than current bills for the upkeep of the property and the asserted liability for local real estate taxes, the subject matter of this litigation.

26. From its incorporation November 12, 1946, to the time of its annual meeting June 29, 1950, the endowment raised $87,700: Treasurer's Rep. p. 116, vol. 56, Penna. Bar Assn. Annual Rep. 1950.

27. By the end of 1953 plaintiff had collected a total of $92,565.14 in its capital funds drive, all of which, with the exception of $2,834.19, representing cash in bank, and $14,800, the book value of investments, has been spent for the acquisition, alteration and repair of the building in question, except for minor sums spent in costs incidental to incorporation and the capital funds drive.

28. An accompanying purpose in the creation of plaintiff was to provide a home for the Pennsylvania Bar Association and the premises in question were purchased in part for use of said association.

29. The Pennsylvania Bar Association has the right and privilege to use the entire building as its requirements demand.

30. Membership in Pennsylvania Bar Association Endowment is limited to members in good standing in the Pennsylvania Bar Association.

31. Before a member of the bar can become a member of the Pennsylvania Bar Association his application must be endorsed by three members of the association and approved by a majority of its committee on admissions: Bylaws, article II, secs. 4 and 5; vol.

56, p. 669, Penna. Bar Assn. Annual Rep. 1950.

32. About 4,000 of Pennsylvania's 9,000 practicing lawyers are not members of the Pennsylvania Bar Association.

33. Plaintiff-endowment does not offer or provide free membership or use of its facilities and service to indigent persons.

34. Members who are one year in arrears in their dues may be expelled from the association: Bylaws, article VIII, sec. 5; vol. 56, p. 689, the Penna. Bar Assn. Annual Rep. 1950.

35. The membership of a member of the Pennsylvania Bar Association Endowment terminates when he ceases to be a member of the Pennsylvania Bar Association: Endowment Bylaws, article V, sec. 5.

36. Annual meetings of plaintiff are held during the same week and in the same city as the annual meetings of the Pennsylvania Bar Association: Bylaws, article V, sec. 1.

37. Notice of the annual meetings of plaintiff is published in the Pennsylvania Bar Association Quarterly and this is the only notice given of such meetings.

38. Annual meetings of plaintiff are held in conjunction with and as part of the regular agenda of the annual meetings of the Pennsylvania Bar Association and are of short duration.

39. The Pennsylvania Bar Association contributed to plaintiff $15,000 of the capital funds used in the acquisition of the building in question.

40. Solicitation conducted by plaintiff for capital funds to acquire, remodel and repair the building was made exclusively of individual members of the bar, the Pennsylvania Bar Association and county bar associations, no public solicitation having been made.

41. In spite of a large membership of about 5,000 attorneys encompassing the present membership of the Pennsylvania Bar Association, and assets of about

$15,000 in the endowment's possession, plaintiff during the years 1950-1953 inclusive, has undertaken no projects incidental to the fulfillment of its corporate purposes, viz., (1) the advancement of jurisprudence, (2) the promotion of the administration of justice or (3) the uniformity of judicial decision.

42. The general public has not utilized the building of plaintiff.

## Discussion

The principal questions presented are (1) is plaintiff-endowment an institution of purely public charity, and (2) if so, has the endowment failed to use its premises in furtherance of its avowed corporate purposes and thereby forfeited its right to total tax exemption?

In considering whether the endowment is an institution of purely public charity, we must keep in mind certain fundamental principles:

First: All property is liable to taxation for the purpose of raising revenue for governmental purposes except such property as is exempted therefrom by statutory enactment within the constitutional limitations: Commonwealth v. Perkins, 342 Pa. 529, 531 (1941), affirmed in 314 U. S. 586, 86 L. Ed. 473.

Second: Tax exemption statutes must be strictly construed: McGuire v. School District of Pittsburgh, 359 Pa. 602; City of Harrisburg v. Harrisburg Cemetery Assn., 293 Pa. 390; Harrisburg v. Trustees of Harrisburg Academy, 308 Pa. 585.

Third: The right to exemption from taxation must be clearly and indubitably established: Ogontz School Tax Exemption Case (Appeal of Township of Abington), 361 Pa. 284; Wynnefield United Presbyterian Church v. City of Philadelphia, 348 Pa. 252.

Fourth: To meet the constitutional limitations on the right to tax for governmental purposes, those who claim exemption from taxation as " 'associations and

institutions of learning' " must clearly establish themselves as " 'institutions of purely public charity' ": Hill School Tax Exemption Case, 370 Pa. 21 (1952) ; Board of Christian Education of the Presbyterian Church v. Philadelphia School District, 171 Pa. Superior Ct. 610 (1952).

Article IX, sec. 1, of the Constitution of Pennsylvania prescribes the powers of and limitations upon the General Assembly in exempting property from taxation. It provides:

"All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, institutions of purely public charity, and real and personal property owned, occupied, and used by any branch, post, or camp of honorably discharged soldiers, sailors, and marines."

The pertinent statutory provisions are found in section 204 of The General County Assessment Law of May 22, 1933, P. L. 853, as amended by the Act of May 3, 1943, P. L. 158, 72 PS §5020-204, which provides, inter alia, as follows:

"The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit: ...

"(c) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the

repair and the necessary increase of grounds and buildings thereof, and for no other purpose; . . .

"(i) All real property owned by one or more institutions of purely public charity, used and occupied partly by such owner or owners and partly by other institutions of purely public charity, and necessary for the occupancy and enjoyment of such institutions so using it; . . .

"(l) . . . Except as otherwise provided in clause (k)[1] of this section, all property, real or personal, other than that which is in actual use and occupation for the purposes specified in this section, and all such property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity, shall be subject to taxation . . . and nothing herein contained shall exempt same therefrom . . ."

Plaintiff-endowment in its brief contends it is a private institution of purely public charity and not administered for private gain. It argues that "the main element in this controversy is the purpose of the charity" and that "it certainly is designed to benefit the public in general from an educational and social standpoint although it may, at the same time, be a monument to Pennsylvania jurisprudence". In substance, plaintiff seems to contend that it is entitled to tax exemption because it is an institution of learning and a museum and argues that "in the final analysis, what is purely a public charity must be decided in the light of the private profit motive".

Defendants contend that plaintiff has not established its right to tax exemption because it has failed to clearly and indubitably establish that it is a purely public charity within the meaning of the Constitu-

---

[1] Clause (k) deals with free, public, nonsectarian libraries and is not pertinent here.

tion, that while plaintiff-endowment is technically a separate legal entity, it is, in fact, merely "a corporate shell holding legal title to the premises in question for the use and benefit of the Pennsylvania Bar Association" which, defendants allege, is a taxable entity because one of its present day purposes is "to secure proper legislation" and to engage in lobbying activities, that assuming plaintiff to be a purely public charity, the premises in question not being devoted to plaintiff's charitable purposes, are not entitled to exemption and further assuming that, as a purely public charity, it partially uses the premises in question in conjunction with the Pennsylvania Bar Association, to the extent that plaintiff would be entitled to partial tax exemption, a court of equity lacks jurisdiction to decide such a question, the proper procedure being an appeal from the decision of the board of revision of taxes and appeals.

### *Is the Endowment a "Purely Public Charity?"*

In Hill School Tax Exemption Case, 370 Pa. 21, 23 (1952), Mr. Justice Allen Stearne said:

"It requires no citation of authority to demonstrate that a private hospital founded and maintained by a group of doctors for their own convenience, with or without profit, would not qualify for such tax exemption. Neither would a private school founded and maintained by any particular group, with or without profit, solely for the benefit of their own children or their nominees. Such institutions would not constitute institutions of 'purely public charity'. But it is equally apparent that charity or benevolence is not limited in scope to feeding, clothing and housing the indigent. To assist one in helping himself may be of even greater importance. Our universities, institutes of technology and research laboratories present fields of inestimable benefit to man."

The court then discussed the meaning of a charity and stated that "it is difficult to give a definition of a charitable use which is both accurate and comprehensive", and quoted from Funk Estate, 353 Pa. 321, 323, 324, in which the court in an opinion by Mr. Justice Horace Stern (now Chief Justice Stern) construed a will which provided: "After all debts the rest to be given to some worthy cause or institution." In that case it was said:

" 'The attempt to formulate a definition that is so specific as to cover every public charity, is sure to prove a failure. Charitable uses take such varied forms that a specific enumeration of the classes or objects is necessarily defective' . . . 'The word "charitable", in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood "to refer to something done or given for the benefit of our fellows or the public." ' Taylor v. Hoag, 273 Pa. 194, 196, 116 A. 826. . . ."

In Hill School Tax Exemption Case, 370 Pa. 21, supra, Mr. Justice Allen Stearne further stated, at page 26:

"Having established that the institution is a 'charity' the *next* consideration is whether it is 'purely public' " (italics supplied), and cited Donohugh's Appeal, 86 Pa. 306, 314, a leading case, in which the court in construing "purely public charity" said:

" 'In this conection, and in its ordinary sense, the word purely means completely, entirely, unqualifiedly, and this is the meaning we must presume the people to have intended in adopting it in their constitution. Plainly, then the charities authorized to be exempted are those that are completely and entirely public. The

phrase is intended to exclude those charities which are private or only quasi public, such as many religious aid societies, and also those which, though public to some extent or for some purposes, have, like Masonic lodges and similar charities, some mixture of private with their public character. The true test is to be found in the objects of the institution. Are they entirely for the accomplishment of the public purpose, or have they some intermixture of private or individual gain?' "

It is important that the *distinction* between "a purely public charity" and a charity or a charitable use or trust be borne in mind. In Tollinger Estate, 349 Pa. 393, 396 (1944), Mr. Justice Patterson, speaking for the Supreme Court, said:

"Distinction must be made between those cases wherein the issue is whether the organization is a charity within the meaning of statutes exempting them from taxation and those wherein the issue is the existence of a valid charitable trust. Cf. Young Men's Christian Assn. of Germantown v. Philadelphia, 323 Pa. 401, and Barnwell's Estate, 269 Pa. 443. In the former the test is whether there exists a 'purely public charity'; in the latter, whether there exists a charitable trust. What may be a charitable trust is not necessarily a 'purely public charity': Barnwell's Estate, supra, 447."

Plaintiff's complaint does not set forth clearly what type of charitable organization it purports to be. However, on cross-examination, Robert T. McCracken, president of the endowment and a former president of the association, testified:

"We believe this to be a scientific and educational institution just as a museum would be . . . I think we are an institution of learning . . . I think we also fall under the museum clause."

The other witness for plaintiff, Col. John McI. Smith, president of the Pennsylvania Bar Association

in the year 1950 and secretary-treasurer of the endowment from its inception, testified that due to lack of funds during the four tax years in question, to wit, 1950, 1951, 1952 and 1953, the endowment, with the exception of acquiring the building in question, had undertaken no projects either of an educational nature or through scientific research to further its corporate purposes in the "advancement of jurisprudence and the promotion of the administration of justice and the uniformity of judicial decision throughout the Commonwealth". The endowment, however, stresses the fact that during this period it collected a few portraits, some furnture and books of historical interest and started what it has termed a "library" consisting of a few ancient legal works and a set of Purdon's Pennsylvania Annotated Statutes, Vale's Digest and Pennsylvania Standard Practice.

Plaintiff, as stated, assigns lack of funds as its reason for its admitted inactivity in promoting its corporate purposes. The evidence, however, establishes that the endowment lacked neither funds nor members to accomplish that which defendants contend was, and is, its actual purpose (and which plaintiff admits was at least an accompanying purpose), namely, the acquisition of a building for the use of the Pennsylvania Bar Association. Plaintiff's only serious effort to raise funds produced over $90,000 for the purpose of purchasing the building in question, repairing it and restoring it for the use of the Pennsylvania Bar Association. Of this sum, $14,500 remains unspent and none of it is definitely planned for expenditure in furtherance of plaintiff's corporate purposes. Nor has the vast automatically acquired membership of the endowment, consisting of about 5,000 members of the Pennsylvania Bar Association, been utilized in furtherance of plaintiff's avowed corporate purposes. The minutes

of the membership meetings of plaintiff, which its president testified were of short duration, and of its board of directors do not reveal any substantial accomplishments on behalf of its avowed corporate purposes. This unfruitful result cannot be attributed in the slightest degree to the officers and directors of the endowment, all of whom are recognized by the bench and bar of Pennsylvania as outstanding leaders of the legal profession which undoubtedly has been enriched by their noteworthy contributions to it.

It appears, however, that the endowment's principal efforts reached their high-water mark in the fund raising drive which was technically conducted in its name in 1948 and 1949 to acquire a new home for the Pennsylvania Bar Association. Thereafter the interest of the members in the avowed corporate purposes of the *endowment* seems to have diminished very rapidly to a point where no substantial results are discernible after the premises were formally dedicated to the use of the Pennsylvania Bar Association on January 6, 1950. Subsequently, a formal "nonexclusive license" agreement was executed by the endowment and the association, dated April 12, 1950, and made retroactive by the parties to July 1, 1949. The evidence does not disclose why this was done but it does appear that plaintiff had received a letter from the city assessor of Harrisburg dated November 10, 1949, questioning the exemption of the real estate in question from taxation. It was also testified the "license" was executed to avoid certain Federal tax problems.

Plaintiff stresses the fact that the money received by it has been purely the subject of donation from the lawyers of Pennsylvania and various county bar associations as well as from the Pennsylvania State Bar Association, that its officers serve without pay and

that plaintiff makes no profit. On this point our Supreme Court in *Ogontz School Tax Exemption Case*, 361 Pa. 284, speaking through the late Chief Justice Maxey, stated, at page 314:

"In its argument Appellee stresses the fact that the School was chartered 'as a non-profit corporation' and that 'no one received directly or indirectly any profit from the school'. These facts do not clothe the School with exemption from taxation. Those who establish and conduct an institution may declare that in doing so they do not intend to make a profit from anyone and they may conduct it without pecuniary profit to anyone, and yet it may not be 'an institution of purely public charity'."

### Restricted Membership in the Endowment

One cannot become a member of the endowment unless he first has been made a member of the Pennsylvania Bar Association after securing the recommendation of three of its members and the approval of a majority of the *association's Committee on Admissions*. Article II, sec. 4, of the association's bylaws [2] provides: "Any member of the Bar of the Supreme Court or Superior Court of Pennsylvania . . . may become an active individual member upon approval by a majority of the Committee on Admissions": Vol. 56, p. 669, Annual Rep. of Pa. Bar Assn., 1950. When one ceases to be a member of the association, his membership in the endowment is automatically terminated. Further-

---

[2] Counsel for the parties agreed that the chancellor might take judicial notice of the charter and bylaws of the Pennsylvania Bar Association as set forth in its official annual reports, subject to their right of objection as to relevancy or for any other reason. The endowment offered in evidence, inter alia, its charter, bylaws, the minutes of its meetings, together with those of its directors, financial statements and other data.

more, the endowment does not offer or provide free membership or participation in its activities or use of its facilities and service to indigent persons.

In Lowe's Estate, 326 Pa. 375 (1937), the court, speaking through Mr. Justice Horace Stern, determined the validity of a bequest to an Odd Fellows Home and noted that an individual member of that order did not possess, " 'but simply had the capacity of attaining, the legal right to share in the benefits of the home' ": Citing Channon's Estate, 266 Pa. 417, 425; Ralston's Estate, 290 Pa. 374. Prior approval of the *committee on admissions* was required. The court held that an applicant for admission to the home had no legal enforceable contractual right to enter, that the bequest to the home was for a charitable use and therefore void because of the death of testatrix within the statutory 30-day period. The court also noted that:

". . . in the leading case of Philadelphia v. Masonic Home of Pennsylvania, 160 Pa. 572, it was held that a Masonic Home was not a *purely public* charity, being open only to Masons, but that it *was* a charity. The home there was for indigent, afflicted or aged Freemasons, and for the destitute widows and orphans of Freemasons in the State of Pennsylvania, and inmates were admitted only after approval of a committee on admissions. . . ." (Italics supplied.)

In Harrisburg v. Trustees of Harrisburg Academy, 308 Pa. 585 (1932), the academy was chartered " 'for the education of youth in useful arts, sciences and literature,' " and maintained a school for boys in the City of Harrisburg. When the academy was assessed a part of the cost of street paving it resisted the city's claim on the ground that the academy was "a purely public charity" whose property was exempt from taxation and therefore not subject to such claim. In sus-

taining the city's claim, the court considered: "The test by which to determine whether a particular institution is a purely public one, . . ." so that it may be exempt from taxation and cited with approval Donohugh's Appeal, 86 Pa. 306, at page 313 (Donohugh v. The Library Co. of Philadelphia) :

.  " 'The essential feature of a public use is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted quality that gives it its public character.' This rule has been repeatedly followed and applied by the courts of this state: (Citing numerous cases) Tried by this standard, defendant cannot be considered an institution of such purely public nature as to meet the constitutional requirement. Admission to the academy is not a privilege open to all who may apply, within the capacity of the school, but is restricted to those whom the *headmaster* in his *discretion sees fit to admit,* and *we are not informed as to how that discretion is exercised.* The class to which the advantages of the academy are restricted is not determined by distinctions which involuntarily affect or may affect the whole people; were this the case, although only a small number might be benefited, it would be none the less a public institution: Burd Orphan Asylum v. School District, supra [90 Pa. 21] ; Philadelphia v. Masonic Home, 160 Pa. 572; Friends' Home v. Commissioners, supra [80 Pa. Superior Ct. 475]. *Defendant exercises unlimited discretion in admitting students,* and is *compelled to receive no one.* It was this same lack of right of admission in the public or any class thereof which we considered material in holding Thiel College *not entitled to exemption from taxation* (Thiel College v. Mercer County [101 Pa. 530]), inasmuch as that college retained unlimited discretion as to acceptance or rejection of applicants. Conversely, Haverford Col-

lege and Lafayette College were held to be purely public institutions within the meaning of the Constitution, because their benefits were extended to all persons educationally qualified upon the same terms: Northampton County v. Lafayette College, supra [128 Pa. 132]; Haverford College v. Rhoads, supra [6 Pa. Superior Ct. 71].

"There can be no doubt that the defendant academy is a school deserving the highest commendation, wisely and unselfishly managed by its trustees, but it is equally clear that it is not an institution of purely public charity, and that its property is not exempt from taxation." (Italics supplied.) See also Delaware County Institute of Science v. Delaware County, 94 Pa. 163 (1880).

It is clear, therefore, that the 4,000 lawyers in Pennsylvania who today are *not* members of the Pennsylvania Bar Association are not immediately eligible for membership in the endowment. Each of them to become eligible would have to secure the endorsement of three members of the association and the approval of a majority of the association's committee on admissions, "and we are not informed as to how that discretion is exercised". Furthermore, should adversity befall any of plaintiff's members in their later years so that they could not afford to pay the $12 annual association dues, they would be subject to expulsion from the latter and automatic forfeiture of membership in the endowment. In the light of the decisions cited, we feel that plaintiff-endowment has not clearly qualified as a *purely public* charity entitled to tax exemption.

### *Has the Endowment Used the Premises in Furtherance of its Avowed Corporate Purposes?*

Regardless of whether plaintiff was a purely public charity when it was incorporated, we think it cannot

maintain its claim for total tax exemption at this time because it did not make any substantial use of its premises in furtherance of its professed corporate purposes during the tax years in question. The controlling principle was stated by Mr. Chief Justice Horace Stern in West View Borough Municipal Authority Appeal, 381 Pa. 416, 420 (1955):

"It is the use of the property, and not the use of the proceeds from the property, which determines whether tax exemption may constitutionally be granted."

And further, at page 422, he said:

"We are of the opinion, however, that the present use of this floor is not a 'recreation center' within the contemplation of the statute. . . . Whatever plans the borough may have for the use of the floor in the future it is the present and not an indefinite, prospective use which controls: Pittsburgh School District v. Allegheny County, 347 Pa. 101, 105, 31 A. 2d 707, 709; Easton v. Koch, 152 Pa. Superior Ct. 327, 333, 31 A. 2d 747, 750; West View Borough Municipal Authority Tax Case, 175 Pa. Superior Ct. 641, 645, 107 A. 2d 130, 132, 133."

This case reaffirms the doctrine laid down in Mullen v. Commissioners of Erie County, 85 Pa. 288 (1877), where it was held that an unfinished cathedral was not tax exempt. There Chief Justice Agnew stated:

"At some day, distant or near, it may be intended to be used for stated public worship, but the fact that it is not now used strips it of its only title to exemption."

In the instant case plaintiff-endowment has given to another corporation, Pennsylvania Bar Association, "the general usage of the building as its requirements demand". When asked whether this was the fact, the secretary-treasurer of the endowment replied:

"Precisely." That official frankly stated that the license [3] was "vague and indefinite".

Before the agreement was executed the association moved in, occupied about 70 percent of the premises and continues to do so. Mrs. Barbara Lutz, executive secretary of the Pennsylvania Bar Association, testified that one of the two rooms on the first floor is used as the association's office and the other for meetings of the association's various committees. With respect

---

[3] The license provides:

"1. The endowment hereby grants unto the association a non-exclusive license to occupy such portions of the premises at 401 North Front Street, Harrisburg, Pennsylvania, as from time to time may be mutually agreeable.

"2. The association agrees that it will coöperate in maintaining the premises in good condition to the end that it may be open and freely accessible to members of the endowment and to such other persons as the endowment from time to time may extend the license to occupy and use said premises.

"3. The association agrees to defray such part of the expenses of maintenance and operation of said premises as from time to time may be mutually agreed.

"4. The association agrees that it will not use the said premises for any other purposes other than that for which the endowment was organized.

"5. This license shall be effective as of July 1, 1949, and shall be terminable without notice by either the endowment or the association.

"In Witness Whereof, the parties hereto have caused these presents to be signed by their proper officers and their corporate seals to be affixed, duly attested, this 12th day of April, 1950.

"Pennsylvania Bar Association Endowment,
"By (Sgd) Robert T. McCracken, President.
"Pennsylvania Bar Association,
"By (Sgd) John McI. Smith, President.
"Attest:
"(Sgd) John McI. Smith.
"(SEAL)
"Attest:
"(Sgd) A. Carson Simpson.
"(SEAL)."

to the second floor, she testified that during the years 1950 to 1953, inclusive, *"we have not used those rooms. We just have the furniture and the portraits in there that have been contributed"*. The endowment has no employes and Mrs. Lutz performs the little clerical work it requires on a gratuitous basis.

On cross-examination, Colonel Smith was asked what items of antique furniture of a legal significance were in the building. He answered that there were approximately 10 of these and half a dozen manuscripts of that character, as well as portraits of Senator Pepper, Mr. McCracken and the late Justice Schaffer. We cannot find from the evidence that the two rooms on the second floor are used as a "museum" or that the general public has utilized the premises. If a museum in fact exists, it is remarkable that plaintiff does not provide at least one employe to safeguard the contents thereof. Certainly Mrs. Lutz does not, and cannot, perform this service because her duties require her presence in the association's office on the first floor.

There are three rooms on the third floor; two of them are used by the bar association as offices by its group insurance committee. In the other room are a few books of historical interest and, as stated, a set of Purdon's Pennsylvania Statutes Annotated, Vale's Digest and Standard Pennsylvania Practice, together with several pieces of furniture.[4] There are no reports of decisions of the Supreme, Superior or Common Pleas Courts of Pennsylvania and no text books. This is said to constitute "an institution of learning", but there is no evidence that learning is being disseminated. As heretofore noted, plaintiff has no employes and *not even a telephone is listed in its name*, the listing

---

[4] Colonel Smith testified: "Outside of the purchase of one sofa I don't think we have spent any money for purchases out of the endowment fund proper."

being under the name of the Pennsylvania Bar Association. The fourth floor is the attic, which consists of "three or four rooms" and is used by the association principally for the storage of records.

Under this evidence, confirmed as it is by the chancellor's inspection of the premises on two occasions during the pendency of these proceedings, we cannot hold that plaintiff conducts an institution of learning, a museum or a public library. In Art Club of Philadelphia's Appeal, 327 Pa. 106 (1937), appellant corporation was organized for the purpose of " 'advancing the knowledge and love of the Fine Arts, through the exhibition of works of Art, the acquisition of books and papers for the purpose of forming an Art library, lectures upon subjects pertaining to Art . . . and to promote social intercourse among its members' ". The evidence disclosed, however, that the primary function of the club was the conduct of a social club and that it was not a purely public charity.

"The Art Club does not become an institution of public charity by opening a part of its art gallery which occupies about 12% of the cubic content of the building, to the public during a part of each year. If this praiseworthy action on its part entitles it to a pro tanto exemption of its taxes, it can as well be argued that a department store in which is maintained an art gallery a part or all the year, open to the public, should likewise be pro tanto exempted. With the same logic as appellant advances, it could be maintained that a home in which 'family worship' is practiced mornings and evenings becomes pro tanto a property devoted to religious uses and therefore proportionately exempt from taxation. The rule appellant would have us establish would be impracticable in administration and would lead to fiscal confusion. By no recognized test can the Art Club of Philadelphia be considered an institution of purely public charity. Since it is not, its

claim for any exemption from taxation on account of its charitable activities has no merit which the law recognizes."

Assuming arguendo that in the instant case plaintiff is actually using a part of the premises in furtherance of its avowed corporate purposes, the question of partial exemption could not be considered as the court lacks jurisdiction in this equity proceeding to decide such a question. Defendant's only remedy in such event is by appeal to the court after exhausting its remedies relating to tax assessments as provided by law: Wynnefield Presbyterian Church v. City of Philadelphia, 348 Pa. 252.

After this proceeding was instituted, plaintiff issued invitations to four groups, including the Joint State Government Commission, Civil Defense Organization, the Procedural Rules Committee and the State Board of Law Examiners, whose distinguished chairman is also a member of plaintiff's board of directors, to use the building, *but none of them has done so.*

Defendants stress the fact that plaintiff receives income for the use of the premises in that the association pays for the light, heat, water and electricity. Mr. McCracken testified the association also pays for the maintenance of the building. Defendants also contend that the association must be assumed to be a nontax exempt organization, there being no proof to the contrary and because one of its objects as set forth in article I of its bylaws is "to secure proper legislation", which defendants say permits it to engage in lobbying activities and might possibly subject the association to Federal and State taxation. The endowment's bylaws on the other hand, provide that none of its "funds, property or income shall be used in attempting to influence legislation. . . ." In our opinion, however, it is not necessary to determine whether the obligations of

the association with respect to the upkeep of the premises constitute "income" to the endowment.

We think one of the principal issues of the case is plaintiff's failure to use its building in furtherance of its avowed corporate purposes. Plaintiff in fact has practically admitted nonuse of the premises in its request no. 20 for findings of fact, viz.:

"20. The only reason for plaintiff not activating projects in furtherance of its corporate purposes such as the 'advancement of jurisprudence' and the 'promotion of the administration of justice' is the lack of funds."

Plaintiff's alleged lack of funds, despite its admitted assets of about $15,000, is not a legal excuse entitling it to tax exemption.

". . . when the use ceases, even though no revenue is derived, a building intended and useful only for a charitable purpose is not exempt. . . ." Dougherty v. City of Phila., 112 Pa. Superior Ct. 570, 575 (1934), citing Phila. v. Jewish Hospital Assn., 148 Pa. 454, 456, wherein it is said: "No charity is administered by the mere possession of the building. . . ." See also Moore v. Taylor, 147 Pa. 481; White v. Smith, 189 Pa. 222, 232.

It goes without saying that tax exemption is a matter of serious concern to every taxpayer in this Commonwealth and especially so in the City of Harrisburg, whose annual loss of tax revenue from real estate taken over by the Commonwealth constitutes a heavy and an ever increasing burden upon its citizens.

We see no reason, legal or otherwise, why the Pennsylvania Bar Association Endowment should not pay its fair share of the taxes necessary for the maintenance of the schools of Harrisburg, the support of its fire and police departments, the paving of its streets, the construction of sewers and the furnishing of light and water, all of which enhance the value of the en-

dowment's Harrisburg real estate. To permit tax exemption would enable plaintiff to accumulate an unearned increment with each passing year.

The Pennsylvania Bar Association *Endowment* holds the title but the Pennsylvania Bar *Association* enjoys the use of the real estate in question. Each of the latter's 5,000 members is obligated to pay annual dues[5] to it and is ipso facto a member of the endowment. While in Harrisburg the members may use the building for their personal comfort and to confer with their friends and clients. Unless the owner of the building is a "purely public charity" and is using it in furtherance of its avowed corporate purposes, which it is not, this court cannot in good conscience shift to the taxpayers of the City of Harrisburg the burden of paying the city, school and county taxes assessed against the endowment's building. In reaching this conclusion we are mindful of what our Supreme Court said in the Ogontz School Tax Exemption Case, 361 Pa. 284 (1949), at 316-317:

"In passing on claims for exemption from taxation no court has the right to ignore the plain mandates of the organic law and of the statutes enacted in conformity therewith. In The Germantown Y.M.C.A. v. Philadelphia, supra, we said: 'Taxes are not penalties but are contributions which all inhabitants are expected to make (and may be compelled to make) for the support of the manifold activities of government. Every inhabitant and every parcel of property receives governmental protection. Such protection costs money. When any inhabitant fails to contribute his share of

---

[5] The "Secretary's Financial Statement" for the fiscal year ending June 15th discloses the following dues received during the four tax years in question: 1950, $36,844; 1951, $46,715; 1952, $47,265; 1953, $48,022. See Annual Report of Penna. Bar Assn., vol. 57, p. 16; vol. 58, p. 15; vol. 59, p. 18; vol. 60, p. 23.

the costs of this protection, some other inhabitant must contribute more than his fair share of that cost.'

"Since the above was written nearly thirteen years ago the cost of all local, state and national governments has increased in unprecedented measure. Every wage earner and every property owner feels the burden of taxation growing constantly heavier. Millions of American income producers are now forced to pay each year in the form of direct and indirect taxes nearly half of their income for the support of national, state and local governments. The heavier the burden of taxation becomes the more exigent is the demand for its equitable distribution. All those whose persons and property receive the protection of government should bear their just share of its cost unless the law specifically exempts them from doing so. To exempt any institution from paying for the protection it receives means that other property owners, already taxed for their own and their property's protection, must also pay for the protection given that exempted institution and its property."

For the foregoing reasons we make the following

### Conclusions of Law

1. Plaintiff, Pennsylvania Bar Association Endowment, is not an "institution of purely public charity" within the meaning of article IX, sec. 1, of the Constitution of Pennsylvania.

2. There being no evidence in the record concerning the taxable status of the Pennsylvania Bar Association, it must be presumed to be an organization or association, not one of purely public charity.

3. Plaintiff makes no substantial use of the premises in question in furtherance of its avowed corporate purposes.

4. The premises are not used in furtherance of the purposes of a purely public charity.

5. Plaintiff is not entitled to claim total exemption of said premises from taxation.

6. Plaintiff's complaint should be dismissed. Accordingly, we enter the following

### Decree Nisi

And now, December 29, 1955, it is ordered, adjudicated and decreed:

1. Plaintiff's complaint is dismissed.

2. Plaintiff shall pay the costs of this proceeding. The prothonotary is directed to enter this decree nisi and to give notice thereof forthwith to all parties of record or their counsel. If no exceptions are filed thereto within 20 days after the entry of this decree, a final decree shall be entered as of course.

### Opinion Sur Exceptions

KREIDER, J., July 23, 1956.—Plaintiff, Pennsylvania Bar Association Endowment, has filed 13 exceptions to our adjudication and decree nisi of December 29, 1955. These exceptions were argued before the court en banc and are now ready for disposition.

The first exception is to the court's findings of fact nos. 4, 5, 6, 19, 20, 24, 26, 28 and 31 through 42 inclusive. The second exception is to our conclusions of law nos. 1 to 6 inclusive. Exceptions 3, 4, 5, 6 and 7 are to the alleged refusal of the court to make findings of fact in acordance with plaintiff's requests nos. 6, 16, 17, 18 and 20; exceptions 8, 9, 10, 11 and 12 are to the refusal of the court to make conclusions of law in accordance with plaintiff's requests nos. 1, 2, 3, 4 and 6. The thirteenth and last exception is to the decree nisi. Counsel for plaintiff in a commendable effort to lighten the court's burden has suggested that the court may dispose of all plaintiff's exceptions by simply sustaining or dismissing them without discussion, except plaintiff's exceptions nos. 3, 4, 5, 6 and 7. As to these,

it is requested that we discuss our disposition of the same.

It may be noted at the outset that the said five requests were not "refused". It is true, however, that they were not formally found as facts in numbered paragraphs in our adjudication. The chancellor treated as suggestions *all* the requests for findings of fact and conclusions of law submitted by plaintiff and defendants.[1] In his adjudication the chancellor discussed the evidence and made his own findings of fact and conclusions of law based on his findings. In view of the suggestion of plaintiff's counsel, we think further discussion of plaintiff's general exceptions to the chancellor's findings of fact and conclusions of law would be useless repetition of the adjudication. Under these circumstances specific answers to such exceptions are not required: Smith v. Smith, 364 Pa. 1, at p. 8 (1950); Morris v. Featro, 340 Pa. 354, at p. 361 (1941). Therefore plaintiff's exceptions 1, 2, 8, 9, 10, 11, 12 and 13 are overruled.

### *Plaintiff's Exceptions Nos. 3, 4, 5, 6 and 7*

Plaintiff's exception no. 3 is "to the refusal of the Court to find in accordance with plaintiff's Request No. 6", which refers to the fact that upon the acquisition of the real estate in question it was placed on the tax exempt list and subsequently returned to the regular tax list following a letter to plaintiff from Edward Taylor, city assessor, which gave as a reason for such contemplated action an uncited decision of the Supreme Court of Pennsylvania. The facts set forth in this request are admitted by defendants except that the city assessor's letter questioning plaintiff's tax exempt

---

[1] A statement of changes in personnel of defendant boards was filed April 7, 1953, pursuant to rule 2352 (*a*), Pa. R. C. P. Consequently, the caption herein as it relates to defendants has been amended accordingly.

status was necesarily brought about by the decision in Ogontz School Tax Exemption Case, 361 Pa. 284. Plaintiff's exception no. 3 is overruled. The request upon which it is based is adequately covered and substantially affirmed in the chancellor's findings of fact nos. 7, 8, 9 and 18. The subject of this request is also referred to in the chancellor's adjudication. Even though plaintiff's request no. 6 had been affirmed *exactly* as drawn, we think it has no relevancy to these proceedings. The logical conclusion of plaintiff's argument on this point seems to be that once property is placed upon the tax exempt list it cannot be removed therefrom, thus ignoring the fact that the tax status one year may not be the tax status the next year. This request would seem to support defendants' contention that in placing the property on the tax exempt list upon its acqusition by plaintiff, defendants gave plaintiff the benefit of the doubt whether it was or was not "a purely public charity" in "use and occupancy" thereof and an opportunity to demonstrate activity and use in furtherance of its avowed corporate purposes. Plaintiff having failed to do so, defendants removed the property from the tax exempt list.

Plaintiff's exception no. 4 "excepts to the refusal of the Court to find in accordance with plaintiff's Request No. 16" which refers to the action of the United States Commissioner of Internal Revenue dated March 24, 1947, and July 5, 1950, whereby plaintiff was exempted by that official for Federal tax purposes. This request is refused. We think it has no relevancy to the issue involved in the instant case. Rulings or decisions under Federal law are not controlling or persuasive of matters subject to the Constitution and the statutory law of Pennsylvania. Plaintiff's exception no. 4 is overruled.

By its exception no. 5 "plaintiff excepts to the refusal of the Court to find in accordance with plaintiff's Request No. 17" which reads as follows:

"Since its acquisition the real estate in question has been used by the plaintiff; the Pennsylvania Bar Association; the Pennsylvania Bar Association Group Insurance Fund operated by 3 Trustees appointed by the Executive Committee of the Pennsylvania Bar Association. Plaintiff has extended an invitation for the use of said premises to Pennsylvania State Board of Law Examiners, Board of Governance of the Pennsylvania Bar and Joint State Government Commission by a Resolution and letter dated June 28, 1950, and war work Committee of the Pennsylvania Bar Association by resolution and letter dated January 18, 1951, and to the Procedural Rules Committee of the Supreme Court. (N. T. 13 to 22 inc.—plaintiff's Exhibits G-1, H, I, J.)"

We think we have made substantial disposition of plaintiff's request no. 17 in our adjudication. It is significant that plaintiff merely excepts to our alleged "refusal" to find certain facts "in accordance with plaintiff's Request", and *not* to our failure to make substantial disposition of its request. See Pa. Equity Rule 1519(*b*). (This applies to all of plaintiff's exceptions.) " 'Consequently specific answers to these exceptions were not required' ": Smith v. Smith, 364 Pa. 1 at p. 8 (1950); Morris v. Featro, 340 Pa. 354. Furthermore, plaintiff's exception no. 5 does not comply with Pa. Equity Rule 1518(*b*) which provides that: "Each exception shall set forth a separate objection precisely and without discussion": Maier v. Walborn & High, 84 Pa. Superior Ct. 522, 526 (1925), Keller, J., cited in 10 Anderson Pa. Civ. Pract., Equity Rule 1518(*b*), p. 258.

In our adjudication we concluded that plaintiff-*endowment has made no substantial use of the premises* in question in furtherance of its avowed corporate purposes and that the premises have *not* been used in furtherance of the purposes of *a purely public charity.* We have reviewed at length heretofore the evidence

and the authorities which we feel substantiate our conclusions on this point. We need only refer again to the testimony of Mrs. Barbara Lutz, Secretary of the Pennsylvania Bar *Association*, who testified with respect to the alleged use by plaintiff-endowment of the second floor of the premises during the tax years 1950 to 1953 inclusive, as follows: *"We have not used those rooms. We just have the furniture and the portraits in there that have been contributed"* and that plaintiff-endowment has *no employes.* Colonel John McI. Smith, President of the Pennsylvania Bar Association in the year 1950 and secretary-treasurer of the endowment from its inception, testified that due to lack of funds during the four tax years in question, to wit, 1950, 1951, 1952 and 1953, the *endowment,* with the exception of acquiring the building in question, *had undertaken no projects* either of an educational nature or through scientific research to further its corporate purposes in the "advancement of jurisprudence and the promotion of the administration of justice and the uniformity of judicial decision throughout the Commonwealth". Colonel Smith also testified: "Outside of the purchase of *one sofa* I don't think we have spent any money for purchases out of the Endowment Fund proper." Furthermore, the testimony of these witnesses as to plaintiff's failure to make substantial use of the premises is confirmed by plaintiff's *own* request no. 20, which is hereinafter set forth.

We have also discussed in considerable detail in our adjudication the relationship between the Pennsylvania Bar *Association* and the Pennsylvania Bar Association *Endowment.* The association occupies about 70 percent of plaintiff-endowment's premises. There is *no evidence* that the *association* is a *purely public* charity or that it is entitled to tax exemption under the Pennsylvania Constitution or the statutory law. With respect to the issuance of invitations to the vari-

ous groups mentioned in plaintiff's request no. 17, we referred to this matter in the adjudication and found from the evidence that *none* of the groups *accepted* the *invitation to use the premises*. It is interesting to note in this connection that these "invitations" were issued *after* the original complaint in equity was filed on May 1, 1950. It is difficult to see how invitations issued after the beginning of the tax year 1950 could affect plaintiff's alleged tax liability for that year. Although we overrule plaintiff's exception no. 5, we will modify plaintiff's request no. 17 on which this exception is based by deleting from the request the first clause, viz.: "Since its acquisition the real estate in question has been used by the plaintiff", and by separating the remaining subjects set forth in the said request into clause (b) to cover the activities of the Pennsylvania Bar *Association* and clause (c) to cover the *invitations* issued to the various groups mentioned. As thus modified, plaintiff's request no. 17 is affirmed.

By its exception no. 6 plaintiff "excepts to the refusal of the Court to find in accordance with plaintiff's Request No. 18" which is as follows:

"The real estate in question may be used not only by the members of the legal profession, but is open to and may be used by the public in general. (N. T. 40, 71-73)"

This request is refused and plaintiff's exception no. 6 is overruled. In our opinion, the evidence was not sufficient in quantity or quality to justify a finding that the real estate in question is open to and "may be used by the public in general". Furthermore, the "nonexclusive license" between the endowment and the association seems to be at variance with plaintiff's request no. 18. That license provides, inter alia, as follows:

"2. The Association agrees that it will co-operate in maintaining the premises in good condition to the end

that it may be open and freely accessible to members of the endowment and to such other persons as the Endowment from time to time may extend the license to occupy and use said premises. . . .

"4. The Association agrees that it will not use the said premises for any purposes other than that for which the Endowment was organized."

Plaintiff's exception no. 7 "excepts to the refusal of the Court to find in accordance with plaintiff's Request No. 20" which reads as follows:

"The only reason for plaintiff not activating projects in furtherance of its corporate purposes such as the 'advancement of jurisprudence' and the 'promotion of the administration of justice' is the lack of funds. (N. T. 66 through 71.)"

The request on which this exception is based was substantially disposed of in the adjudication. Consequently plaintiff's exception no. 7 must be overruled. We think lack of funds is no legal excuse for the failure to carry out the avowed corporate purposes of plaintiff-endowment. We reaffirm what we said in our adjudication on this point:

"Plaintiff's alleged lack of funds, despite its admitted assets of about $15,000, is not a legal excuse entitling it to tax exemption.

" '. . . when the use ceases, even though no revenue is derived, a building intended and useful only for a charitable purpose is not exempt. . . .' Dougherty v. City of Phila., 112 Pa. Superior Ct. 570, 575 (1934), citing Phila. v. Jewish Hospital Assn., 148 Pa. 454, 456, wherein it is said: 'No charity is administered by the mere possession of the building. . . .' See also Moore v. Taylor, 147 Pa. 481; White v. Smith, 189 Pa. 222, 232."

See also West View Borough Municipal Authority Appeal, 381 Pa. 416, 420 (1955), at 422, wherein the Supreme Court, speaking through Chief Justice Horace Stern said:

"We are of opinion, however, that the present use of this floor is not as a 'recreation center' within the contemplation of the statute. . . . Whatever plans the borough may have for the use of the floor in the future it is the present and not an indefinite, prospective use which controls: Pittsburgh School District v. Allegheny County, 347 Pa. 101, 105, 31 A. 2d 707, 709; Easton v. Koch, 152 Pa. Superior Ct. 327, 333, 31 A. 2d 747, 750; West View Borough Municipal Authority Tax Case, 175 Pa. Superior Ct. 641, 645, 107 A. 2d 130, 132, 133."

The West View Borough case reaffirms the doctrine laid down in Mullen v. Commissioners of Erie County, 85 Pa. 288. (1877), where it was held that an unfinished cathedral was *not* tax exempt. There Chief Justice Agnew stated:

"At some day, distant or near, it may be intended to be used for stated public worship, but the fact that it is not now used strips it of its only title to exemption."

### Final Decree

And now, July 23, 1956, after argument and due and careful consideration of this case, it is ordered, adjudged and decreed that the adjudication of the chancellor be and the same is hereby adopted as the opinion of the court en banc; the findings of fact and conclusions of law of the chancellor are also adopted as the findings of fact and conclusions of law of the court en banc; plaintiff's request for finding of fact no. 17 as hereinabove modified by the court is affirmed. Each of plaintiff's exceptions is dismissed and the decree nisi is affirmed and adopted as the final decree of the court. Plaintiff's complaint is dismissed at its cost and judgment is entered in favor of defendants and against plaintiff, Pennsylvania Bar Association Endowment.