## Erie Parking Authority Appeal

*Marsh, Spaeder, Baur & Spaeder*, for appellant.

*Gerald Weber* and *William J. Cavanaugh*, for appellee.

LAUB, J., September 23, 1958.—This matter is before us on a case stated, and is an appeal from the decision of the Board of Revision of Taxes and Appeals for the City of Erie. The case presents a single legal

point for solution, whether a certain piece of real estate acquired by the Erie Parking Authority prior to January 1, 1958, may be taxed by the City of Erie for the taxable year beginning January 1, 1958. The agreed facts are these:

The Erie Parking Authority, prior to January 1, 1958, acquired a piece of land in the City of Erie, for the purpose of erecting, installing and operating an off-the-street public parking area. At the time of purchase, there was erected upon said land, a building occupied and used by a private club, said club being the owner from whom the parking authority acquired title. Adjacent to the building was a parking area used exclusively by the club.*

On January 1, 1958, the club was in full possession of the premises, notwithstanding it had executed an agreement to surrender possession to the parking authority in December 1957. The possession by the club was of the building and adjacent parking lot, and it was had by sufferance of the parking authority, not by virtue of any written lease. No compensation was paid for the club's occupancy.

The club continued to occupy the property until March 15, 1958, at which time the authority entered the land and took possession for the purpose of demolition and the construction of a public parking area.

As noted above, the sole point for decision is whether the Erie Parking Authority is obligated to pay real estate taxes to the City of Erie for the taxable year 1958. There is no question of apportionment, it being agreed that if any taxes are due, they may be collected for the entire year.

---

* This fact was not disclosed in the case stated, but counsel at argument agreed that such was the case and that up until March 15, 1958, there was a sign erected at the entrance to the parking area notifying the public that the area was private and that any unauthorized vehicle discovered therein would be towed away.

When a question of tax exemption arises, recourse must always be had, as a starting point, to the basic provisions of the Constitution of the Commonwealth. Under section 1 of article X of this Constitution, the General Assembly is authorized to exempt from taxation certain types of property, including public property used for public purposes. The Constitution does not establish exemptions; it merely authorizes them under the conditions mentioned.

The legislature, in enacting the Parking Authority Law of June 5, 1947, P. L. 458, 53 PS §341 et seq., attempted to exonerate taxes on property of the authorities in the following language in section 15, 53 PS §355: ". . . since such Authorities will be performing essential governmental functions in effectuating such purposes, such Authorities shall not be required to pay any taxes or assessments upon any property *acquired or used* by them for such purposes . . ." (Italics supplied.)

The city's contentions are that the Constitution forbids the legislature from exonerating property not actually used for public purposes, and therefore proscribes an exemption of property "acquired" but not actually used in such manner. It is certainly true that the legislature may not extend the exemption provisions of section 1 of article IX so as to exempt property not precisely covered therein. The second section of the same article of the Constitution succinctly states: "All laws exempting property from taxation, other than the property above enumerated shall be void." See also West View Borough Municipal Authority Tax Case, 175 Pa. Superior Ct. 641, 646. Thus in the city's view, when the authority permitted the prior owner to occupy and use the land in question for a period of two and a half months to the exclusion of the public, it was permitting a private use which could

not work an exoneration of taxes, the provision in the parking authority law permitting the exemption of land "acquired" for public use being void.

The parking authority argues that since there was no lease to the former owner, and since the authority derived no benefit from the use of the land, the club's occupancy was not that of the authority, but that of the former owner. The authority's view is that before the land could be taxed while in its name, the authority must itself be using the land for a nonpublic purpose.

There might be some force to this argument if the authority had merely acquired title prior to January 1, 1958, without at the same time acquiring the right of possession. However, when it acquired the fee, it also acquired in writing the right of possession as of December of 1957. In view of this circumstance, when the authority acquiesced in the club's occupancy of the land to the exclusion of the public for a period of two and a half months, it was technically in possession, and the question of who was using the land became settled. It would be a matter of indifference whether the club occupied under the authority by virtue of a written lease, or by parol or whether or not there was consideration for the use. It is the use to which land is put and not some indefinite prospective use which determines the status (West View Borough Municipal Authority Appeal, 381 Pa. 416, 422), and the question of compensation to the authority for the land's use is not a factor in the determination of the use: Pittsburgh Public Parking Authority v. Board of Property Assessment, 377 Pa. 274, 283; Moon Township Appeal, 387 Pa. 144, 149. It seems clear, therefore, that on the tax lien date for 1958, the property involved was devoted to a private and not a public use.

Because the authority was not quite ready to enter and build at the time it acquired ownership, and since

it only delayed a matter of two and a half months before ousting the club and starting construction, there is some temptation to conclude that the matter is de minimis, the equities being with the authority. However, there are two practical considerations which preclude us from doing so. Primarily, the provisions of the Constitution must be strictly adhered to by us, our oath of office requiring that fidelity. Further, in a society where public authorities are fast reducing the tax rolls, with a concomitant increase of tax burdens on the citizens, it is necessary that the courts be meticulous in defining the limits to which such authorities may go. The ancient adage, "wretched is the thralldom where the law is either uncertain or unknown," puts into a few words the requirement for decisive action on our part. If a public authority may acquire property, ostensibily for public purposes, but permit such use for a period of time for the benefit of an individual or group of individuals, we should say so now, and the period of time involved should not be a consideration. If the authority could permit a private citizen to occupy its property for two and a half months and at the same time defeat the city's right to tax it, it could do so for a longer period of time, thus subjecting the authority's prerogatives to a multitude of abuses.

It should be noted that this is not a case where the authority had actually entered the land for the purpose of starting construction, permitting the previous owner to remain temporarily because construction plans did not call for immediate demolition of the building. Had such been the situation, one might easily conclude that the entry and start of construction constituted a devotion of the land to public use. But here the authority conferred a gratuity upon the previous owner, a charity not included in its legislatively conferred powers. Had it decided to permit the club to

remain for the period in question, it might easily have protected itself by requiring the club as a prerequisite to occupancy to pay the taxes for the year 1958. Whether it could follow such a course for a protracted period of time is not important here, but that which is important is the fact that it conferred a benefit upon individuals at the expense of the public. This is one of the things the Constitution intended to prevent, and we are of the opinion that neither the courts nor the legislature can thwart such design.

And, now to wit, September 23, 1958, the appeal is dismissed at the cost of the parking authority.